**Joseph W. IMPSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 12A02–9903–CR–208.

Court of Appeals of Indiana.

Jan. 6, 2000.

---

Richard D. Martin, Frankfort, Indiana, Attorney For Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi E. Froug, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge

### STATEMENT OF THE CASE

Defendant–Appellant Joseph W. Impson appeals his convictions of battery as a Class D felony, battery as a Class A misdemeanor, and battery as a Class B misdemeanor, Ind.Code § 35–42–2–1.

We affirm.

### ISSUES

Impson raises four issues for our review, which we renumber and restate as:

I. Whether the deputy prosecutor committed prosecutorial misconduct by impeaching his own witness.

II. Whether the deputy prosecutor committed prosecutorial misconduct by referring to "Domestic Violence Awareness Month" during closing argument.

III. Whether Impson's right to assistance of counsel was violated by the ineffectiveness of trial counsel.

IV. Whether the State presented sufficient evidence to establish Impson's conviction of battery as a Class B misdemeanor.

V. Whether the trial court deprived Impson of his constitutional right to bail.

### FACTS

On July 4, 1998, Impson and his wife, Lori, engaged in a heated argument when Lori canceled a family outing. The argument ended with Impson leaving and Lori calling the police.

When police officers arrived at the family residence, Lori was crying and upset. She told the officers that Impson had knocked her down and had pushed her head into a wall. Lori rubbed her head as she related the story of Impson's violence toward her. Officer Boyd Martin did not see any marks on Lori's head, but he did observe that her knees were scraped. When asked about her knees, Lori stated that they had been scraped when she hit the floor after Impson knocked her down. Lori refused to sign an affidavit because she believed Impson would not return to the marital residence.

Later the same day, Lori invited Jerry Cunningham and his cousins, David and Larry Cunningham, to her home for a cookout. When the Cunninghams arrived at the marital residence, Lori explained what had happened during the argument with Impson.

Impson called the marital residence and spoke with Jerry. Impson then came to the residence, kicked in the front door, entered the living room, and angrily approached Larry. He made a smacking motion at Larry's head, knocking Larry's glasses from his face.

Jerry stood to confront Impson. Impson crossed the room and punched Jerry in the nose. The two exchanged punches, and Jerry eventually pinned Impson on the floor. Jerry then let Impson go when it appeared that he had cooled down. Impson got up off the floor, entered the kitchen, obtained a chair, returned to the living room, and attempted to hit Jerry with the chair. Jerry was able to push Impson out the front door, where he was met by police officers who had been called to the scene.

At this time, Lori told the officers that she wished to sign an affidavit pertaining to the earlier battery. Lori then told the officers that Impson had pushed her down onto the ground and had also pushed her head into the wall. Officer Randy Emery wrote down exactly what Lori told him about the incident in the battery affidavit.

After Officer Emery explained the affidavit to Lori, she signed it.

The State charged Impson with two counts of battery as a Class A misdemeanor for his attacks against Lori and Jerry. It also charged him with one count of battery as a Class B misdemeanor for his attack on Larry. In a separate cause number, the State also alleged that Impson had violated his probation by committing these offenses.

The battery and the violation of probation cases were tried together. A jury found Impson guilty of all three batteries. The battery conviction for the attack of Lori was elevated to a Class D felony because Impson had a prior battery conviction. The trial court determined that Impson violated his probation. Impson now appeals.

## DISCUSSION AND DECISION

### I. PROSECUTORIAL MISCONDUCT IN IMPEACHING OWN WITNESS

Impson contends that the deputy prosecutor committed prosecutorial misconduct by calling Lori to the stand for the sole purpose of impeaching her testimony through her affidavit and the hearsay statements of the investigating officers, and by using the impeachment evidence as substantive evidence of the offense charged. Impson bases his contention on his belief that the deputy prosecutor acted in bad faith by calling Lori as a witness when he knew that she would not testify against Impson.

▰▰▰ When reviewing an allegation of prosecutorial misconduct, this court makes two inquiries. First, we determine by reference to case law and rules of conduct whether the prosecutor engaged in misconduct. Second, we determine whether the alleged misconduct placed the defendant in a position of grave peril to which he should not have been subjected or evinced a deliberate attempt to improperly prejudice the

defendant. *Bellmore v. State,* 602 N.E.2d 111, 120 (Ind.1992), *reh'g denied.* "Grave peril" is determined by analyzing the "probable persuasive effect of the misconduct on the jury's decision. . . ." *Stevens v. State,* 691 N.E.2d 412, 420 (Ind.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998) (*quoting Maldonado v. State,* 265 Ind. 492, 355 N.E.2d 843, (Ind.1976)).[1]

▰▰▰ Impson's trial counsel did not object to the prosecutor's questions of Lori. Counsel also did not object to the prosecutor's use of either the alleged hearsay statements by the investigating officers or the battery affidavit. In order to preserve error for our review, a defendant must properly object at the time evidence is offered. *White v. State,* 687 N.E.2d 178, 179 (Ind.1997). Failure to make such an objection constitutes a waiver of the issue for appellate review. *Id.* However, because Impson also contends that his trial counsel was ineffective for failure to object, we will follow our supreme court's lead and address the issue on its merits. *See Timberlake v. State,* 690 N.E.2d 243, 254 (Ind.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999) (permitting review on the merits where the issue of ineffective assistance of trial counsel was raised on appeal).

In the present case, the record discloses that in his opening statement the prosecutor alerted the jury that Lori was "very reluctant to testify today," noting:

> You will see that reluctance. It's very obvious. But she told the officers what happened that day and in fact after the second event occurred Officer Emery said [sic] presented her with . . . what's called a Battery Affidavit a formal complaint form describing what had happened in the earlier incident and she agreed to sign that under oath she agreed to sign that. Clearly stating that she had in fact had her head rammed

1. We note that in *Cox v. State,* 696 N.E.2d 853, 859, n. 6, Justice Boehm noted a distaste for the term "grave peril."

into the wall and that she had suffered an injury. Now she's unwilling to say that today and so we will offer at least I anticipate that she will be. She's very reluctant to testify but you are going to hear other evidence. . . . (R. 199). The prosecutor called Lori as a witness, and although she did acknowledge that she had argued with Impson, she denied that he hit her or pushed her head into the wall. The prosecutor confronted Lori with the battery affidavit, which stated that Impson "did knowingly touch Lori Impson in a rude, insolent and angry manner, to-wit: pounded head into wall, ripped shirt[,] which touching resulting in bodily injury to Lori Impson." (R. 209). Lori acknowledged that she had signed the affidavit, but stated that she was too drunk at the time to understand what it said. The prosecutor then offered the affidavit as evidence, and it was admitted without objection. Thereafter, the prosecutor proceeded to, in effect, cross-examine Lori regarding her professed lack of memory regarding the signing of the affidavit.

During the State's case-in-chief, Officer Martin testified that immediately after the battery occurred, Lori told him that Impson had knocked her down and rammed her head into the wall. Officers McCullough and Emery testified that Lori was not so intoxicated at the time she gave her statement for the affidavit that she did not understand what was happening. Officer Emery also testified that the portion of the affidavit stating "pounded head into wall, ripped shirt" was a direct quote of what Lori had told him and that Lori told him that Impson had "pushed her head in the wall and threw her on the ground on the first call." (R. 258–59). Jerry Cunningham testified that when he arrived at Lori's house about an hour after the battery, Lori "mentioned something about [Impson] busted a bottle or busted it on her head or something like this." (R. 219).

During closing argument, the prosecutor stated that Lori's memory on the day of trial was very selective. He also stated that on the day the battery occurred "she was excited about these events . . . she

didn't have time to reflect or concoct some sort of story that might help her husband out of a situation." (R. 304–05). He then stated that it is "very common in human nature to have someone who is excited about a particular event not be able to lie about it at that time [because] there's not enough reflection in what had happened." (R. 305). He concluded that Lori "is not telling the truth today about what happened. She's not telling you what she really remembers about the incidents because she, again she has fallen into that false feeling of safety." (R. 305).

■ The impeachment of a witness is governed by Ind.Evid. Rule 607, which authorizes a party to impeach the credibility of its own witness. Impson refers us to Seventh Circuit cases which, in interpreting the federal counterpart of Evid.R. 607, have held that it would be an abuse of the rule for a prosecutor to call a codefendant as a witness who he knew would not give useful evidence, just so the prosecutor could introduce otherwise inadmissible hearsay evidence against the defendant "in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence—or, if it didn't miss it, would ignore it." *U.S. v. Webster*, 734 F.2d 1191, 1192 (7th Cir.1984). *See also, U.S. v. Kane*, 944 F.2d 1406, 1411 (7th Cir.1991); *U.S. v. Medley*, 913 F.2d 1248, 1257 (7th Cir.1990). In determining whether an abuse of the rule has occurred, we determine whether the prosecutor examined the witness for the *primary* purpose of placing before the jury otherwise inadmissible evidence. *Rafferty v. State*, 610 N.E.2d 880, 885 (Ind.Ct.App.1993). If the State has a legitimate basis to call the witness, then the placement of otherwise inadmissible evidence before the jury is proper. *Id.*

We find *U.S. v. Gilbert*, 57 F.3d 709 (9th Cir.1995) to be instructive. In *Gilbert*, the defendant went to the home of his estranged wife, Tina, and put a gun to the head of her boyfriend, Suddeth. Immediately following the incident, Tina and Sud-

deth gave statements that defendant had been carrying the gun. However, at trial they both testified that they had not seen a gun. The government impeached both witnesses with evidence of their prior inconsistent statements through the testimony of Suddeth's ex-wife and son.

The defendant contended that the government had violated Federal Rule of Evidence 607 by calling Tina and Suddeth for the sole purpose of introducing evidence of prior unsworn inconsistent statements that the defendant had been carrying a gun. The defendant argued that the government knew the witnesses would deny having seen the defendant with a gun or having stated that they saw him with a gun.

The court held that Tina and Suddeth were percipient witnesses whose testimonies were essential to the government's case. *Id.* at 711. The court further held that "if the government had not called these two witnesses, the jury would have been left to ponder why the government was reluctant to question these eye-witnesses." *Id.* at 712. The court ultimately held that the government was allowed to impeach Tina and Suddeth. *Id.*

██ In the present case, the prosecutor suspected that Lori would not give testimony that was consistent with her prior statements to the police. However, Lori was the only percipient witness to the battery, and as the victim of the battery, she was the essential witness to the State's case. As such, the prosecutor's failure to call her as a witness would have left the jury to ponder why the victim would not testify.

We cannot say that the prosecutor committed misconduct in calling the only witness to the battery in the hope that she would provide some admissible evidence of the attack upon her person. We also cannot say that the prosecutor committed misconduct in impeaching Lori with her affidavit and her prior statements to the investigating officers. We conclude that the prosecutor did not call Lori for the primary purpose of placing inadmissible evidence before the jury.[2]

██ Furthermore, we note that statements by a percipient witness are admissible under Ind.Evidence Rule 803(2) when the evidence shows that the statements (a) pertain to a startling event or condition; (b) are made while the declarant was under the stress or excitement caused by the event or condition; and (c) are related to the event or condition. *Yamobi v. State,* 672 N.E.2d 1344, 1346 (Ind.1996). Here, Lori's statements to Officer Martin pertained to the battery upon her person. The statements were made immediately after the battery occurred, while she was crying and still upset because of the stress of the attack. Under the circumstances of this case, Officer Martin was permitted to testify as to Lori's excited utterances, and such utterances were admissible as substantive evidence. The prosecutor did not commit misconduct by offering these statements as both substantive and impeachment evidence.[3]

██ Finally, we note that Ind.Evidence Rule 803(5) provides an exception to the hearsay rule for a memorandum or record if (a) the memorandum or record relates to a matter about which a witness once had knowledge, (b) the witness has insufficient recollection at trial to enable the witness to testify fully and accurately, (c) the witness is shown to have made or adopted the memorandum or record, (d) the memorandum or record was adopted when the mat-

---

**2.** We note that, except in extreme circumstances, a prosecutor will never absolutely "know" that a domestic abuse victim will refuse to recall the events she previously attested to in her statement. It is always possible that the formal setting of a judicial proceeding in a courtroom, coupled with the impetus of an oath to tell the truth, will motivate the victim to testify consistently with her former statement. For this reason, we believe that a prosecutor does not engage in misconduct in calling a domestic abuse victim to the stand.

**3.** We address the admissibility of the testimonies of Jerry Cunningham and Officer Emery in Issue III below.

ter was fresh in the witness's memory, and (e) the memorandum or record is shown to reflect the witness's knowledge correctly. Here, the battery affidavit relates to the attack upon Lori by Impson. Lori's denial at trial of the specifics of the attack serves as the "insufficient recollection" required by (b) above. *See* Miller, 13 *Indiana Practice* § 803.105, at 631 (1995) (*citing* 2 McCormick § 282, at 258 (4th ed.1992) for the proposition that "courts have found 'insufficient memory' when an apparently reluctant witness claims lack of memory to evade a question"). The signing of the affidavit on the same day as the attack arguably shows a timely adoption of the statement while the matter was fresh in Lori's memory. Finally, the affidavit's consistency with the statements made by Lori to the investigating officers and to Jerry is indicative that it reflects Lori's knowledge correctly. *See U.S. v. Porter,* 986 F.2d 1014, 1017 (6th Cir.1993), *cert. denied,* 510 U.S. 933, 114 S.Ct. 347, 126 L.Ed.2d 312 (court determined that prior statements detail and internal consistency established its accuracy).[4] The prosecutor did not commit prosecutorial misconduct by calling attention to this document.

## II. PROSECUTORIAL MISCONDUCT IN CLOSING ARGUMENT

In closing argument, the prosecutor noted, without objection, that "it's very appropriate that this month is Domestic Violence Awareness Month and that you had the opportunity to listen to this case this month." (R. 303). The prosecutor also stated, without objection, that "I ask you to go back and end this month of Domestic Awareness [and] do the right thing." (R. 307–08).[5]

Impson contends that the prosecutor's comments concerning "Domestic Violence Awareness Month" were improper because they were intended both to inflame the prejudices of the jury to persuade it to decide Impson's guilt for improper or irrelevant reasons and to persuade the jury to convict Impson out of a duty to society. Impson further contends that the prosecutor's comments were improper because they were "based upon inadmissible evidence and facts not in evidence." Appellant's Brief at 26.

 It is misconduct for a prosecutor to request a jury to convict a defendant for any reason other than guilt. *Maldonado,* 355 N.E.2d at 848. Here the prosecutor's statements are ambiguous. The last statement was preceded by a recitation of the evidence, and within that context, the statement could refer to the importance of the jury to "do the right thing" by considering all of the evidence. This would be a proper statement. Conversely, the statements could refer to the importance of the jury to "do the right thing" by capping off "Domestic Violence Awareness Month" with a conviction. This would be an improper statement. However, even if the statement was improper, we cannot say under the circumstances that the statement placed Impson in "grave peril," and we are therefore not constrained to reverse the conviction. *See Maldonado,* 355 N.E.2d at 849 (holding that a prosecutor's improper statement that a conviction "may be the most important thing you'll ever do for your community" did not place the defendant in "grave peril").

## III. ASSISTANCE OF COUNSEL

Impson contends that he was deprived of his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution. Specifically, he contends that trial counsel was ineffective for failing to object to (1) Officer Martin's testimony; (2) the use of the battery affidavit as substantive evidence; (3) the prosecutor's references to Domestic

---

4. Even if we assume that the battery affidavit is not admissible, it is at worst cumulative evidence. As such, its erroneous admission could not have placed Impson in "grave peril."

5. Even though there was no objection to these statements, we consider this issue on the same basis stated in Issue I above.

Violence Awareness Month during closing argument; and (4) Jerry Cunningham's and Officer Emery's testimonies. Impson also intimates that trial counsel performance was hindered by a violent act against her that occurred approximately two months before trial on this matter.

�oo Our standard of review for ineffective assistance of counsel claims is well-established. There is a strong presumption that counsel rendered adequate assistance. *Brown v. State,* 691 N.E.2d 438, 446 (Ind.1998). The burden is upon the petitioner to rebut this presumption with strong and convincing evidence. *Stevens v. State,* 701 N.E.2d 277, 281 (Ind.Ct. App.1998). In order to prevail, the petitioner must show first that counsel's representation was deficient, and second that the deficient performance so prejudiced him that he was deprived of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to establish deficient performance, the petitioner must show that, in light of the circumstances, counsel's performance was outside the wide range of professionally competent assistance. *Id.* In order to establish prejudice, the petitioner must show that counsel's performance rendered the trial fundamentally unfair or unreliable. *Id.; State v. Van Cleave,* 674 N.E.2d 1293, 1298 (Ind.1996), *modified on reh'g,* 681 N.E.2d 181 (Ind. 1997), *cert. denied,* ─── U.S. ───, 118 S.Ct. 1060, 140 L.Ed.2d 121 (1998).

▮ In order to prevail on a claim that counsel was ineffective for failing to make an objection, it must be shown that a proper objection would have been sustained by the trial court. *Vega v. State,* 656 N.E.2d 497, 504 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* As we stated in Issue I, Officer Martin's testimony regarding Lori's excited utterances was admissible. Accordingly, the trial court would not have sustained an objection by trial counsel. Trial counsel was not inef-

fective for declining to object to Officer Martin's testimony.

▮ As we also stated in Issue I above, the prosecutor did not commit misconduct in calling attention to the battery affidavit. Although an objection to the admission of the affidavit would have been sustained pursuant to Evid.R. 803(5), the affidavit could have been read to the jury. Given the similarity between Officer Martin's testimony and the contents of the affidavit, we do not find that the admission of the affidavit was prejudicial. Accordingly, Impson was not deprived of his right to effective assistance of counsel.

As we stated in Issue II, the prosecutor's comments on final argument, although arguably improper, did not put Impson in a position of "grave peril." We likewise find that trial counsel's failure to object was not prejudicial. Therefore, Impson was not deprived of his right to effective assistance of counsel.

▮ Our review of the record discloses that Lori's statements to Jerry Cunningham and Officer Emery were made after Lori apparently had calmed down enough from the battery to call and invite friends over for a cookout.[6] The statements also were not made immediately after Lori perceived the event. Accordingly, the statements were not admissible as excited utterances pursuant to Evid.R. 803(2) or present sense impressions pursuant to Evid.R. 803(1), and timely objections to the respective testimonies would have been sustained. However, because the statements are cumulative of both the affidavit and Officer Martin's testimony, there is no prejudice.

▮ Our review of the record also discloses that trial counsel sought a continuance because of an attack upon her person the weekend before the trial was originally scheduled to start on September 9, 1998. The continuance was granted, and the trial

───────

**6.** We reject the State's argument that Lori's excitement caused by the batteries upon Larry and Jerry Cunningham was sufficient to ren-

der her statement to Officer Emery about the previous attack on her person admissible under Evid.R. 803(2).

was postponed until October 21, 1998. Impson has presented no evidence that the previous trauma had any effect on counsel on the day of trial. Accordingly, he has failed to establish that he was denied his right to effective assistance of counsel.

## IV. SUFFICIENCY OF THE EVIDENCE

Impson contends that the State failed to present sufficient evidence to support his conviction for the battery upon Larry Cunningham. He emphasizes that he made no contact with Larry's body when he knocked Larry's glasses off of his face.

In order to establish the commission of battery, the State is required to show that a person knowingly or intentionally touched another person in a rude, insolent, or angry manner. Ind.Code § 35-42-2-1. Any touching, however slight, may constitute battery. *Scruggs v. State*, 161 Ind.App. 666, 317 N.E.2d 807, 809 (1974). Indeed, a person may commit the "touching" necessary for battery by touching another's apparel. *Stokes v. State*, 233 Ind. 10, 115 N.E.2d 442, 443 (1953), *reh'g denied*, 233 Ind. 10, 116 N.E.2d 296. This is because a person's apparel is so intimately connected with the person that it is regarded as part of the person for purposes of the battery statute. *Id.*

Here, the State presented its case through Larry, who acknowledged that Impson did not strike his face. However, he did testify that Impson angrily knocked his glasses from his face by "just light [sic] sort of like a light smack, you know just enough to knocked [sic] them off." (R. 239-40).

For purposes of the battery statute, Larry's glasses are as intimately connected with his person as the victim's apparel in *Stokes*. Accordingly, the State's evidence is sufficient to support the conviction.

## V. RIGHT TO BAIL

Impson contends that the trial court violated Ind. Const. art. I, § 17 when it refused to grant bail in his violation of probation case. Impson raised this contention in the violation of probation case after securing the trial court's permission to file a belated appeal pursuant to Ind. Post-Conviction Rule 2(1). The State asserts that the trial court did not have authority to grant Impson's motion to file a belated appeal under P-C.R. 2(1). The State further asserts that this court lacks jurisdiction to consider any issue arising from the violation of probation case because Impson failed to timely file his praecipe.

The timely filing of a praecipe is a jurisdictional prerequisite to an appeal and a precondition to the right to appeal. *Vaughn v. Schnitz*, 673 N.E.2d 501, 502 (Ind.Ct.App.1996). Effective January 1, 1994, an amendment to P-C.R. 2(1) created a limited avenue for permitting the filing of a belated praecipe. *Neville v. State*, 694 N.E.2d 296, 297 (Ind.Ct.App. 1998). The amendment authorizes trial courts to permit the filing of a belated praecipe, but only for a direct appeal of a criminal conviction. *Id.* "As such, P-C.R. 2(1) provides a method for seeking permission for belated consideration of appeals addressing conviction, but does not permit belated consideration of appeals of other post-judgment petitions." *Greer v. State*, 685 N.E.2d 700, 702 (Ind.1997). The trial court erred in permitting the filing of a late praecipe pursuant to P-C.R. 2(1), and we do not have jurisdiction to decide the issue raised in this matter.

Impson contends that he was forced to request permission to file a belated praecipe by the trial court's failure to give his appellate counsel written notice of his appointment. We treat this contention as an application to this court to exercise our inherent power to hear this appeal. *See Vaughn*, 673 N.E.2d at 502. Such power will be exercised "only in rare and exceptional cases, such as in matters of great public interest, or where extraordinary circumstances exist." *Lugar v. State*,

270 Ind. 45, 383 N.E.2d 287, 289 (1978) (citation omitted).

 Our review of the record discloses that although the trial court failed to give timely notice to appellate counsel, the court did give notice to Impson in open court that his appellate counsel would be the same counsel who was representing him in another appeal from a conviction in Clinton Circuit Court. Impson subsequently failed to apprise counsel of his appointment in this action. The record does not disclose the type of extraordinary circumstance which would warrant equitable relief.

## CONCLUSION

Impson was not deprived of a fair trial through either prosecutorial misconduct or by ineffective assistance of trial counsel. In addition, the State presented sufficient evidence to establish the offense of battery, a Class A misdemeanor. Furthermore, we do not have jurisdiction to consider the issue Impson attempts to raise from the revocation of probation action.

Affirmed.

FRIEDLANDER, J., concurs.

SULLIVAN, J., concurring in result in part, with separate opinion.

SULLIVAN, Judge, concurring in result in part.

With respect to Issue I, I agree that the statement made by Lori to the investigating officers was appropriately admitted. I do not, however, agree that it was admissible pursuant to Ind. Evidence Rule 803(5). The facts of this case demonstrate the dangers inherent in admitting a prior inconsistent statement as a "rule of necessity" under the guise of an 803(5) recorded recollection. See *Williams v. State* (1998) Ind.App., 698 N.E.2d 848, 852 *et seq.*, (Sullivan J., dissenting).

With regard to Issue V, I believe it clear that Impson was entitled to have a bond set upon the charge of probation violation. Therefore, he was, perhaps erroneously, detained in custody from July 4, 1998, until the date of his convictions upon the battery charges, in October, 1998. At this juncture, however, there is no relief which can be afforded. The denial of bail does not taint the battery convictions nor the probation revocation itself.

Nevertheless, I disagree with the basis for the majority's resolution of the bail issue. The majority holds that Impson was not entitled to a belated appeal from the probation revocation and that, therefore, the bail issue, which is subsumed in the revocation judgment itself, is likewise precluded. The basic premise is flawed.

The seminal case in this area is *Howard v. State* (1995) Ind., 653 N.E.2d 1389 which held that a belated appeal from denial of post conviction relief under P–C.R. 2(1) may only lie where the challenge is to the conviction itself, i.e., a direct appeal. The decision, however, does not purport to preclude belated appeals in every conceivable instance except for direct criminal appeals. Accordingly, *Greer v. State* (1997) Ind., 685 N.E.2d 700, cited by the majority here, must be read in the context of *Howard*.

The appeal at issue with respect to the bail issue, is a direct appeal from a probation revocation and does not run afoul of *Howard, supra,* 653 N.E.2d 1389. See *Riffe v. State* (1997) Ind.App., 675 N.E.2d 710, *trans. denied.* However, as noted, the propriety of Impson's appeal does not give rise to any relief which can be afforded for the erroneous bail ruling.