IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30575-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ROBERT TODD WALKER, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, C.J. — Robert Walker appeals his conviction for manufacturing methamphetamine and the accompanying exceptional sentence, raising numerous arguments. Concluding that he has not established any prejudicial error, we affirm.

FACTS

An effort to manufacture methamphetamine caused a fire in Joe Leckenby's bedroom on September 14, 2003. Robert Walker's cousin observed him jump out of Leckenby's bedroom window, climb back inside and throw something from the room out the window, and then jump back outside again. While his cousin called the fire department, Mr. Walker left the scene. A responding fire fighter saw him depart in a car.

Outside the window of the bedroom, investigators found a can of acetone and a brown liquor bottle with a white substance on the bottle opening. Inside the bedroom, police found the remnants of a methamphetamine lab, including: dry ice, a propane torch, a water cooler with two pieces of clear plastic tubing with tape, a one-pint glass mason jar containing a clear tan liquid that had an 18-inch tube attached to it that was tied at one end and contained a white granular substance, a plastic Dr. Pepper bottle containing a yellow liquid and clear granules, a two-quart glass jar containing rock salt and yellow liquid, small Ziploc "baggies" with residue, a mirror with residue, two glass smoking pipes, a can of acetone, and a jar containing acetone. The granules, liquid, and residue were found to be methamphetamine. Ex. 23. The report from the crime laboratory, Exhibit 23, was entered into evidence at trial without objection; defense counsel recognized that it was "self-authenticating."

The prosecutor charged Mr. Walker with one count of manufacturing methamphetamine in June 2004. He subsequently failed to appear for an omnibus hearing, resulting in the addition of a bail jumping charge. He later failed to appear for a trial date.[1] Trial eventually began in July 2007. At that time, the prosecutor removed the bail jumping charge.

---

[1] Mr. Walker's sporadic appearances for mandatory court hearings ultimately became the basis for several bail jumping charges. *See State v. Walker*, 153 Wn. App. 701, 224 P.3d 814 (2009).

2

A deputy clerk testified to Mr. Walker's failure to appear for three different court dates. The trial court, over defense objection, instructed the jury on accomplice liability. The defense theory of the case was to blame his uncle, Mr. Leckenby, for the manufacturing. Nonetheless, the jury found Mr. Walker guilty on the manufacturing count.

The defense successfully moved to consolidate three bail jumping convictions under two other cause numbers for sentencing with this case. The trial court subsequently granted a motion to dismiss the manufacturing charge. This court reversed and remanded for sentencing. *See* cause no. 27286-9-III. On remand, the trial court imposed an exceptional sentence by running the 100-month manufacturing sentence consecutive to the 51-month sentence imposed for three bail jumping convictions.

Mr. Walker then timely appealed to this court.

## ANALYSIS

Mr. Walker raises nine issues on appeal. We will address, sometimes quite briefly, eight of those contentions largely in the order in which they are presented in the briefing.[2]

---

[2] His final contention is a claim of cumulative error, which we need not discuss at all because we conclude he has failed to establish any prejudicial error.

*Laboratory Report*

Appellant first contends that his Sixth Amendment right of confrontation was violated when Exhibit 23 was entered at trial. He also contends that his counsel was ineffective by not requiring the laboratory analyst to testify at trial.

Both of these contentions have been rejected in recent decisions. The right of confrontation is not violated by the admission of laboratory reports in accordance with CrR 6.13(b). *State v. Schroeder*, 164 Wn. App. 164, 168, 262 P.3d 1237 (2011). The right must be asserted or it is waived. *Id.*; *State v. O'Cain*, 169 Wn. App. 228, 247-48, 279 P.3d 926 (2012). Furthermore, the tactical decision whether or not to demand the presence of the witness is one for trial counsel to make. *O'Cain*, 169 Wn. App. at 244-45. Typically, tactical decisions are not subject to an ineffectiveness challenge. *Strickland v. Washington*, 466 U.S. 668, 689-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

We can see many reasons why defense counsel would not want an analyst to testify at trial and buttress the conclusions expressed in the report. It is far easier to raise questions to a jury in closing argument than it is to obtain useful answers from the opposing side's expert witness. Seldom will there be a need to have the expert testify.

The Sixth Amendment right to confrontation was not violated. Counsel similarly was not ineffective by declining to demand the analyst testify at trial.

*Flight Evidence*

Mr. Walker next contends that the trial court erred by permitting evidence at trial that he fled from the area and that he missed several court dates. This argument was waived by his failure to object at trial.

RAP 2.5(a) states the general rule—except for manifest constitutional and jurisdictional matters, a party must object at trial in order to preserve an issue for appellate review. With respect to evidentiary issues, the rules are even tighter. In order to present an evidentiary argument on appeal, the party must have challenged the admission of evidence at trial on the same grounds that it raises on appeal. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985). As explained in *Guloy*:

> As to statement (d), counsel objected but on the basis that it was not proper impeachment nor was it within the scope of redirect. A party may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial. Since the specific objection made at trial is not the basis the defendants are arguing before this court, they have lost their opportunity for review.

*Id.* (citation omitted).

The admission of other "bad acts" evidence under ER 404(b) does not present a constitutional issue. *Dowling v. United States*, 493 U.S. 342, 352, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990). It likewise does not implicate the jurisdiction of the trial court. Accordingly, there is no basis for this court to consider the argument. RAP 2.5(a).

The challenge to the flight evidence was waived by the failure to present the matter to the trial court.

*Prosecutor's Closing Argument*

Mr. Walker next argues that the prosecutor erred in closing argument by allegedly commenting on his right to remain silent, telling the jury the right decision was to find the defendant guilty, and expressing the prosecutor's personal opinion. He did not challenge any of these statements at trial. We conclude that he has not met the high burden applicable to this type of challenge.

The appellant bears the burden of demonstrating prosecutorial misconduct on appeal. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997). The appellant must establish that the conduct was both improper and prejudicial. *Id.* Prejudice occurs where there is a substantial likelihood that the misconduct affected the jury's verdict. *Id.* at 718-19. Reversal is not required where the alleged error could have been obviated by a curative instruction. *State v. Gentry*, 125 Wn.2d 570, 596, 888 P.2d 1105 (1995). Moreover, the failure to object constitutes a waiver unless the remark was so flagrant and ill-intentioned that it evinced an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. *Id.* Moreover, a prosecutor has "wide latitude" in arguing inferences from the evidence presented. *Stenson*, 132 Wn.2d at 727.

6

*Right to Remain Silent.* Mr. Walker argues first that by mentioning his flight and failure to appear in court during closing argument, the prosecutor commented on his right to remain silent in derogation of the Fifth Amendment. This novel argument has no support in law or fact.

A statement will only be considered a comment on the right to remain silent if it was intended to be a comment on the right; otherwise, mention of silence constitutes a "'mere reference'" that is not a violation unless prejudice is shown. *State v. Burke*, 163 Wn.2d 204, 216, 181 P.3d 1 (2008) (citing *State v. Crane*, 116 Wn.2d 315, 804 P.2d 10 (1991) and *State v. Lewis*, 130 Wn.2d 700, 927 P.2d 235 (1996)). A subtle and brief remark does not normally amount to a comment on the right to remain silent. *Burke*, 163 Wn.2d at 216; *Crane*, 116 Wn.2d at 331.

The prosecutor did discuss Mr. Walker's flight at some length, as well as his failures to appear in court and his "omissions by conduct." The discussion was not "subtle and brief." The question remaining is whether the discussion was clearly intended to be a comment on the right to remain silent. It was not.

The trial court permitted the prosecutor to offer flight evidence. He therefore was free to comment on it during argument. Mr. Walker did more than flee the scene of a fire; he also abruptly departed the area and had to be extradited back from Oklahoma.[3] It

---

[3] *State v. Walker*, 153 Wn. App. 701, 707, 224 P.3d 814 (2009).

is very difficult to understand how this evidence should be considered an assertion of the right to remain silent. It is even more difficult to classify the prosecutor's discussion of the evidence as commentary on the defendant's exercise of a constitutional right.

The prosecutor's argument addressing the flight evidence did not constitute misconduct.

*"Get This Right."* Mr. Walker next argues that the prosecutor erred by telling the jury to "get this right" and find the defendant guilty. In the context of the argument, the statement was not improper, and to the extent it could have been viewed otherwise, it was capable of correction by timely objection.

During rebuttal argument, the prosecutor addressed defense counsel's statements about the testimony of the defendant's cousin and the first responding fire fighter, stating near the end of his remarks:

> The fact is Ms. Brown and John Hodge are consistent on that. It's him. He was the one there at the scene actively going in, going out, tossing things out the window. He was the one that fled. Ladies and gentlemen, I'm asking you to hold this person accountable for what he did. *You need to get this right, and the right decision, the right verdict is to find the defendant guilty.*

Report of Proceedings (RP) at 163 (emphasis added).

In context, this statement appears to be little more than indicating that the proper conclusion to be drawn from the testimony was that Mr. Walker was the person tossing

8

items out of the bedroom and then fleeing the scene. Telling the jury to reject the defense argument and return the correct verdict was not improper.

Other states have found similar arguments by the prosecutor to be improper when they do not relate to the evidence. *E.g., State v. Musser*, 721 N.W.2d 734 (Iowa 2006); *Impson v. State*, 721 N.E.2d 1275, 1283 (Ind. Ct. App. 2000); *Lisle v. State*, 113 Nev. 540, 937 P.2d 473 (1997). In *Musser*, for instance, the Iowa Supreme Court interpreted the prosecutor's remarks as arguing that the jury could find the evidence insufficient but still convict the defendant because it was the right thing to do. 721 N.W.2d at 755-56.

That same problem does not arise here. The prosecutor's argument was grounded in a discussion of the evidence as he transitioned to the conclusion of his remarks. He did not argue that the jury should convict despite the evidence. Under these circumstances, the statement was not erroneous.

Lastly, Mr. Walker contends that the prosecutor twice expressed his personal opinion of the defendant's guilt during closing argument. On the first occasion, the prosecutor stated: "Now, I'm not here telling you the only person involved in this is the defendant. I do not know, but I know that he – I think the evidence shows that he is involved without any question." RP at 151. On the second occasion, the prosecutor explained why the defendant had fled when he should have been letting a jury decide the

case: "The reason he doesn't is that he knows—I know he knows what the outcome should be." RP at 154.

A prosecuting attorney is not allowed to state his personal opinion regarding the defendant's guilt. *State v. Copeland*, 130 Wn.2d 244, 290, 922 P.2d 1304 (1996). Neither of the now-challenged remarks is a statement of personal opinion concerning the defendant's guilt. The first comment was quickly corrected from "I know" to "I think the evidence shows" and did not come across as a personal opinion of guilt. The second statement ("I know he knows") does come across as a personal opinion, but it is not an opinion about guilt. Instead, it is a personal opinion about the defendant's own opinion of the case as demonstrated by his repeated flight.

The challenged statements do not amount to misconduct. The statements, to the extent any of them were erroneous, also were not so flagrant or ill-intentioned that they were beyond cure from a timely objection. Any misperception easily could have been corrected by a timely word from the trial court. For that reason, too, this issue is without merit.

*Ineffective Assistance*

Mr. Walker next argues that his trial counsel failed him in several ways, including trial preparation and theory of the case, and by not objecting to certain evidence or the

10

prosecutor's closing argument. He has failed to satisfy the heavy burden that governs this challenge.

Well understood standards govern our review of the Sixth Amendment guarantee of the right to counsel. The mere presence of an attorney does not satisfy the constitutional command. Instead, the attorney must perform to the standards of the profession. Counsel's failure to live up to those standards will require a new trial when the client has been prejudiced by counsel's failure. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. *Strickland*, 466 U.S. at 689-91. To prevail on a claim of ineffective assistance, the defendant must show both that his counsel erred and that the error was so significant, in light of the entire trial record, that it deprived him of a fair trial. *Id.* at 690-92. When a claim can be disposed on one of the *Strickland* prongs, a reviewing court need not consider both prongs. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Mr. Walker's varied challenges to his counsel's performance implicate many of these principles. We will address his complaints in a somewhat different order than he presents them.

11

One of Mr. Walker's complaints is that trial counsel did not subpoena witnesses for a pretrial hearing and did not investigate his uncle's role in the case. Since the witnesses did testify at the pretrial hearing, counsel apparently had no need to compel them to do so. It is doubtful there was any error and most certainly there was no harm.

The record does reflect that Mr. Leckenby was no longer living in the area when Mr. Walker's case finally was tried; it does not tell us whether or not defense counsel ever spoke with him. In light of Mr. Leckenby's statement to police that Mr. Walker was manufacturing the methamphetamine, there is no basis for believing that he would have been helpful to the defense. Mr. Walker has simply not established either that his counsel failed him in this regard or that he was harmed by counsel's actions.

Mr. Walker also contends that counsel erred by not pursuing a third party perpetrator theory at trial. This was clearly a strategic decision by counsel; the theory of the case is a matter left to trial counsel. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 734-35, 16 P.3d 1 (2001). Moreover, it was a sound one. The presence of others at the scene—whether Mr. Leckenby or the mysterious "Raymond"—did not establish Mr. Walker's innocence. Counsel understandably focused on the evidence suggesting Mr. Walker was not involved rather than taking on the task of proving who did manufacture the methamphetamine. The approach to the case was a strategic matter left to counsel. The fact that other approaches could have been tried does not establish that counsel erred.

12

For similar reasons, counsel's failure to challenge the testimony of witnesses who addressed defendant's flight and how the manufacturing operation could cause a fire does not establish ineffective assistance. These likewise were tactical decisions by counsel. The flight evidence was admissible; an objection would likely have been fruitless. *See, e.g., Neal v. Green*, 68 Wn.2d 415, 421-22, 413 P.2d 339 (1966); *State v. Price*, 126 Wn. App. 617, 645, 109 P.3d 27 (2005). The fact that a fire occurred was undisputed; evidence of how the fire might have been started helped complete the story for the jury, but it was not a matter the jury needed to resolve. There was no reason to object to the testimony and no harm to the defense by failing to challenge it—if there even was a basis for doing so. Neither of these tactical choices suggests that counsel erred in some manner, let alone that the defense was prejudiced.

Finally, Mr. Walker argues that his counsel should have challenged the previously noted arguments by the prosecutor. We have concluded that there was no error. Thus, there is no basis for further analyzing the derivative claim of ineffective assistance of counsel. The prosecutor did not err, so defense counsel could not have erred.

There are many ways to try a criminal case. Mr. Walker has not established that his trial counsel's approach to this case failed to conform to the standards of the profession or that he suffered prejudicial error. Accordingly, he has not shown that counsel performed ineffectively.

*Accomplice Liability Instruction*

Mr. Walker next argues that the court erred by instructing the jury on accomplice liability. The evidence supported the instruction; there was no error.

Trial courts have an obligation to provide instructions that correctly state the law, are not misleading, and allow the parties to argue their respective theories of the case. *State v. Dana*, 73 Wn.2d 533, 536-37, 439 P.2d 403 (1968). The trial court also is granted broad discretion in determining the wording and number of jury instructions. *Petersen v. State*, 100 Wn.2d 421, 440, 671 P.2d 230 (1983). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

A person is an accomplice of another person in the commission of a crime if:

> (a) With knowledge that it will promote or facilitate the commission of the crime, he or she:
> (i) Solicits, commands, encourages, or requests such other person to commit it; or
> (ii) Aids or agrees to aid such other person in planning or committing it.

RCW 9A.08.020(3)(a)(i)-(ii).

The State's case showed that someone was manufacturing methamphetamine at Leckenby's house and that Mr. Walker was seen trying to dismantle some of the operation before fleeing the scene. There also was evidence that the crime occurred in Leckenby's bedroom, not Mr. Walker's, and that

Leckenby and a "Raymond" were also present. On this evidence, it was unclear whether the operation was solely attributable to the efforts of Mr. Walker or if he was working in conjunction with the others. Accordingly, the evidence supported giving this instruction and it was necessary in order for the State to argue its theory of the case.

The instruction also did not harm the defense. Mr. Walker was able to argue that he was not present and, even if he was, it was someone else's operation. Thus, the trial court properly gave the instruction.

*Jury Inquiries*

The trial court responded to three jury inquiries, but the record does not reflect whether counsel was consulted before the responses. From this, the appellant argues that his CrR 6.15 and due process rights were violated, while respondent contends that Mr. Walker has not established any error occurred.

The court responded to the three inquiries by telling the jury (1) it could not have a transcript of Ms. Brown's testimony, (2) it must rely on its own memory of the evidence, and (3) it should continue its deliberation. The responses came 3, 16, and less than 1 minute after the inquiries were received.

CrR 6.15(f) requires that the court notify the parties of any jury inquiry and allow comment thereon. It also requires the court to make a record of the inquiry,

15

any response, and any objection to the response. The rule does not require the court to make a record of its compliance with the duty to notify and consult the parties. Here, it is highly likely the court did not consult the parties unless counsel happened to be present when the questions were received. Recent authority, however, is suggestive to the contrary. On a record where the court responded to an inquiry eight minutes after it was received, Division One of this court concluded in the face of a silent record that the trial court had not notified the parties as required. *State v. Jasper*, 174 Wn.2d 96, 102, 271 P.3d 876 (2012). The Washington Supreme Court disagreed and refused to consider the defendant's argument in light of the fact he had not shown that the court had not contacted him. *Id.* at 124.

Under the reasoning of *Jasper*, we cannot presume error from a silent record.[4] This issue was better left to a personal restraint petition. *State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159 (1991). We do not decide the

---

[4] "'On a partial or incomplete record, the appellate court will presume any conceivable state of facts within the scope of the pleadings and not inconsistent with the record which will sustain and support the ruling or decision complained of; but it will not, for the purpose of finding reversible error, presume the existence of facts as to which the record is silent.'" *Barker v. Weeks*, 182 Wash. 384, 391, 47 P.2d 1 (1935) (quoting 4 C.J. *Appeal and Error* § 2666, at 736 (1916).

issue on this basis, however. Previous authority establishes that any error here was harmless.

A "negative" communication between the court and the jury is one that conveys no information. *State v. Safford*, 24 Wn. App. 783, 794, 604 P.2d 980 (1979) (citing cases). It long has been settled that a negative communication to the jury is harmless error. *State v. Colson*, 9 Wn.2d 424, 426-27, 115 P.2d 677 (1941); *State v. Russell*, 25 Wn. App. 933, 948, 611 P.2d 1320 (1980); *Safford*, 24 Wn. App. at 794.

The court's responses to the jury in this case all were "negative" in nature. They conveyed no new information to the jury. Thus, the errors in responding to the inquiries without notice to and consultation with the parties, if such was the case, were harmless.

*Sufficiency of the Evidence*

Mr. Walker also contends that the evidence did not support the conviction, primarily arguing that the State failed to establish his active participation as an accomplice. Properly viewed, the evidence permitted the jury to draw the conclusion that it did.

The question presented is whether there is sufficient evidence to support the determination that each element of the crime was proved beyond a reasonable

17

doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Green*, 94 Wn.2d at 221-22. There is no need for the reviewing court to weigh evidence or sift through competing testimony.

A person is guilty of manufacturing a controlled substance when he prepares, processes, or produces a controlled substance. RCW 69.50.101(p); RCW 69.50.401(1). An accomplice is someone who, with knowledge that he is facilitating the commission of a crime, aids another in committing the offense. RCW 9A.08.020(3)(a)(ii).

The evidence easily supports the jury's determination that manufacture of a controlled substance occurred at the Leckenby residence. While not as overwhelming, the evidence also supported the determination that Mr. Walker was assisting the operation and knew what he was doing. He was with the operation when the fire broke out, left and returned into the room through the window, threw an object outside, and fled when the authorities were contacted rather than attempt to fight the fire as his uncle was doing. Two incriminating objects—a bottle with methamphetamine on it and a can of acetone—were recovered near the window Mr. Walker used for ingress and egress.

18

On this evidence, the jury was quite justified in deciding that Mr. Walker knew what was going on and attempted to dismantle the operation (or at least remove the incriminating components) before choosing to flee rather than face the authorities. These are not the actions of an innocent person; rather, they reflect someone who had something to hide. He was at least an assistant in the operation if not the primary figure.

The evidence supported the jury's determination.

*Exceptional Sentence*

The final challenge is to the court's imposition of an exceptional sentence by ordering the term of the manufacturing sentence served consecutively to the term of the bail jumping convictions. The court properly exercised its sentencing discretion in imposing this exceptional sentence.

An exceptional sentence may be imposed if the trial court finds "substantial and compelling" reasons to go outside the standard range. RCW 9.94A.535. The trial court must enter written findings of fact and conclusions of law if it does impose an exceptional sentence. *Id.* A nonexclusive list of mitigating factors is recognized by statute. RCW 9.94A.535(1). However, an exceptional sentence above the standard range must be based on a recognized statutory factor. RCW 9.94A.535(2), (3).

Either party may appeal an exceptional sentence. RCW 9.94A.585(2). The statutory scheme for review of an exceptional sentence has long been in place. An exceptional sentence is reviewed to see if either (a) the reasons for the exceptional sentence are not supported by the record or do not justify an exceptional sentence, or (b) the sentence imposed is clearly excessive or clearly too lenient. RCW 9.94A.585(4). Thus, appellate courts review to see if the exceptional sentence has a factual basis in the record, is a legally justified reason, and is not too excessive or lenient. *State v. Law*, 154 Wn.2d 85, 93, 110 P.3d 717 (2005). Differing standards of deference or nondeference apply to those three issues. *Id.*

It is an aggravating factor, entitling the court to exceed the standard range, if "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2)(c). For a level 3 drug offense, the range for an offender with a score of 6 or higher is 100 to 120 months. RCW 9.94A.517. Mr. Walker had prior criminal history totaling 6 points based on 4 adult felonies (one point each) and 4 prior juvenile felonies (1/2 point each). The 3 current bail jumping offenses raised his offender score to 9.

The trial court correctly recognized that the bail jumping counts did not increase Mr. Walker's standard range on the manufacturing conviction and that if

served concurrently, there would be no additional punishment resulting from those 3 convictions.[5] The exceptional sentence ordering consecutive terms was authorized by RCW 9.94A.535(2)(c).

The court did not err by imposing the exceptional sentence.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, C.J.

WE CONCUR:

_____
Brown, J.

_____
Kulik, J.

---

[5] In part this situation resulted from the defendant's request to join the bail jumping convictions for sentencing on the same day, thus squarely treating them as other current offenses subject to concurrent sentences under RCW 9.94A.589(1)(a). The timing of these convictions is not in our record, but it is possible that they might otherwise have been subject to RCW 9.94A.589(3), which accords trial judges discretion to impose concurrent or consecutive sentences to cases that are sentenced serially.