**Phyllis RAFFERTY, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 65A01–9207–CR–235.**

Court of Appeals of Indiana,
First District.

March 22, 1993.

---

Glenn A. Grampp, Evansville, for appellant-defendant.

Pamela Carter, Atty. Gen., Sue A. Bradley, Deputy Atty. Gen., Office of Attorney General, Indianapolis, for appellee-plaintiff.

BAKER, Judge.

Defendant-appellant Phyllis Rafferty appeals her convictions following a jury trial for two counts of child molesting, both Class C felonies.[1] She raises fourteen issues for our review, but because we reverse, we address only these two restated issues:

I. Whether the trial court erroneously admitted both exhibits and testimony relating to sexually explicit paraphernalia.

II. Whether the trial court erroneously allowed the State to impeach its own witness.

### STATEMENT OF FACTS

Phyllis and Robert Rafferty endured a difficult marriage.[2] He slept alone upstairs while she slept in the basement, and the two spent little time together. They had no children, although Phyllis had one son, M.R., from a previous marriage.

---

1.  IND.CODE 35–42–4–3(c).

2.  Robert was deceased by the time of Phyllis's trial.

Marital discord notwithstanding, the Raffertys' home was a popular hang-out for the neighborhood kids. The Raffertys lived on a lake and Phyllis allowed M.R.'s friends to swim and play there, and she further allowed the children to "have the run of the house." *Record* at 325. In fact, the children generally considered Phyllis to be the "neighborhood mom." *Record* at 314.

J.W., the alleged victim, frequently visited the Raffertys' home. At first, J.W., who was ten years old at the time, went there to play with M.R., who was seven years old. As J.W. got older, however, his visits allegedly took an unsavory twist. Beginning in 1985, when he was twelve years old, J.W. allegedly began a sexual relationship with Phyllis. J.W. testified that he had sex with Phyllis nearly every weekend for several years, and that these encounters occurred most frequently in Phyllis's bedroom, but also at the local YMCA where Phyllis worked.

In addition to his relationship with Phyllis, J.W. allegedly engaged in group sex with Phyllis, Linda Daniels, who was a friend of Phyllis's, Robert, Cedric Williams, who was a friend of Robert's, and T.L.[3] T.L. testified that M.R. walked into Phyllis's bedroom one day while she was in bed with both T.L. and J.W.

J.W. also alleged that on one occasion in 1991, while he was in Phyllis's bedroom, she told him she wanted to have sex with both him and her son. According to J.W., he then went upstairs to M.R.'s room, asked M.R. to join them, and after M.R. refused, performed oral sex on him. J.W. then returned to Phyllis's bedroom, kissed her, and went home.

The next day, June 24, 1991, J.W. reported the incident to the police because he was disturbed that Phyllis "wanted to have some sort of sexual relationship with her son." *Record* at 131. Later that day, Phyllis was charged by information with two counts of child molesting arising from her alleged relationship with J.W. In con-

junction with the information, the police obtained a search warrant for the Rafferty home. During their subsequent search, the police recovered sexually explicit books, magazines, and video tapes from Robert's upstairs bedroom, as well as a sexual device from Phyllis's bedroom.

Prior to trial, Phyllis filed a motion *in limine* to exclude evidence of or references to "dildos or any sexual devices," but the motion was denied. *Record* at 38. Additionally, Phyllis orally moved to preclude the State from questioning her son about a statement he made to police in which he implicated his mother in incestuous activity. Although M.R. recanted prior to trial, Phyllis's motion was denied.

At trial, over Phyllis's repeated objections, J.W. testified that he accidentally discovered a sexual device which was hidden under Phyllis's mattress, and that during other visits to the Rafferty home, he had noticed sexually explicit books and magazines. Subsequently, however, during cross-examination, J.W. admitted that the sexual device was never used during any of the sexual encounters, that the sexually explicit materials in Robert's room were never shown to him, and that these materials did not belong to Phyllis.

Similarly, during direct examination of T.L., the State asked him if he had seen "any sexual aids anywhere in the house?" *Record* at 191. Phyllis timely objected, and during a hearing held outside the jury's presence, T.L. admitted Phyllis never showed him sexually explicit books, magazines, or video tapes, and further that no sexual devices were ever used. Phyllis unsuccessfully moved for a mistrial on the ground that the references to sexual materials and devices had unfairly prejudiced her. In denying her motion, the trial court stated the challenged evidence was admissible because it corroborated J.W.'s claim that he had been in the Raffertys' home. *Record* at 196.

At the conclusion of the State's case-in-chief, the trial court admitted the sexual

---

**3.** T.L. also lived in the Raffertys' neighborhood. Although he testified at trial about incidents of sexual encounters between himself and Phyllis, the State did not file any charges against Phyllis regarding T.L.'s testimony.

paraphernalia into evidence over Phyllis's objection.[4] Thereafter, during Phyllis's case-in-chief, Phyllis denied any knowledge of or participation in any of the alleged sexual activities.

The jury convicted Phyllis on both counts of child molesting. Following a hearing on April 7, 1992, the trial court enhanced each of the presumptive four-year sentences and ordered Phyllis to serve two eight-year terms concurrently. Phyllis appeals both her convictions and her sentence.[5]

## DISCUSSION AND DECISION

### I. Admission of Exhibits and Testimony

Phyllis argues the exhibits and testimony relating to sexually explicit paraphernalia were irrelevant and unduly prejudicial.

■ The general rule in Indiana is that evidence is relevant if it tends logically to prove or disprove a material issue of fact. *Hansford v. State* (1986), Ind., 490 N.E.2d 1083, 1089; *see also* Federal Rule of Evidence 401; Model Rules of Evidence 3, 10. Evidence tending to prove a material fact is admissible even if the tendency to provide such proof is slight. *Goodloe v. State* (1982), Ind., 442 N.E.2d 346, 347. Otherwise relevant evidence may be inadmissible, however, if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to the defendant. *Warner v. State* (1991), Ind., 579 N.E.2d 1307, 1310; *see also* Federal Rule of Evidence 403; Model Rule of Evidence 303. The admission of physical evidence is governed by the same rules of relevancy and materiality which govern admission of testimonial evidence. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 89, *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986).

### A. Exhibits

■ The admission of an exhibit of physical evidence is governed by a two-part test: (1) the witness who observed the particular instrumentality must be able to state at the least that the item shown is like the one associated with the crime, and (2) there must be a showing that the item is connected to the defendant and the commission of the crime. *Andrews v. State* (1989), Ind., 532 N.E.2d 1159, 1162–63. The physical evidence need only constitute a small but legitimate link in the chain of evidence connecting the defendant with the crime. *Id.* at 1163.

■ Here, J.W. never alleged that Phyllis used any of the seized paraphernalia during the sexual encounters which formed the basis of the charges against Phyllis. In fact, J.W. admitted that Phyllis never showed him the sexually explicit materials, and, moreover, that Robert owned these materials, not Phyllis. Regarding the sexual device, even if Phyllis owned it, J.W. testified that he discovered it accidentally, and further that Phyllis kept it hidden and never showed it to him. Accordingly, the challenged exhibits were neither "like the instrumentality associated with the crime," nor "connected to Phyllis's commission of the crime." *Andrews, supra.* Furthermore, the exhibits do not constitute even a "small link" in the chain of evidence connecting Phyllis to the alleged crimes. *See id.* Although the challenged exhibits may corroborate J.W.'s presence in the Rafferty's home, his presence was not disputed. In short, the exhibits are irrelevant and thus inadmissible.

Because we conclude the exhibits were irrelevant, we need not balance their probative value against their prejudicial impact. *See Warner, supra.* Our review does not end here, however. Instead, we must examine whether the inadmissible evidence prejudiced Phyllis. An error may be deemed harmless on appeal if it has not prejudiced the substantial rights of the appellant. *Johnson v. State* (1992), Ind., 584 N.E.2d 1092, 1104, *cert. denied,* — U.S. ——, 113 S.Ct. 155, 121 L.Ed.2d 105 (1992).

---

4. State's Exhibit 1: sexual device.
   State's Exhibits 2A–E: sexually explicit books.
   State's Exhibits 3A–F: sexually explicit video tapes.
   State's Exhibit 4: sexually explicit magazines.

5. Because we reverse both of Phyllis's convictions, we need not address Phyllis's challenge to the propriety of her sentence.

We cannot say the admission of the exhibits was harmless error. Even though the jury heard both J.W. and T.L. testify that the paraphernalia belonged to Robert, not Phyllis, and even though both J.W. and T.L. admitted that Phyllis never showed them any sexually explicit pictures, or used sexual devices, the exhibits significantly strengthened the State's portrayal of Phyllis as a sexually deviant woman.[6] Absent these sexually explicit exhibits, the remaining evidence against Phyllis comes down to a credibility contest. If the jurors did not have the exhibits to bolster the State's witnesses, they may have assessed credibility differently and acquitted Phyllis. Because the exhibits prejudiced Phyllis's right to a fair trial, a new trial is warranted.

### B. Testimony

Inasmuch as we conclude that the exhibits are irrelevant and thus inadmissible, and inasmuch as an issue may arise during Phyllis's retrial concerning testimony about these exhibits, we wish to emphasize that testimony about these exhibits is similarly irrelevant. If the exhibits themselves are irrelevant, as a matter of logic any testimony concerning the exhibits would be likewise irrelevant and inadmissible. *See Bieghler, supra.*

### II. M.R.'s Testimony

Although we have already determined that Phyllis is entitled to a new trial, we address Phyllis's challenge to M.R.'s testimony because this issue will likely resurface at retrial. Phyllis argues the trial court erroneously allowed the State to call M.R. as a witness. She contends that his testimony was neither proper impeachment testimony nor admissible substantive evidence.[7]

During a hearing conducted outside of the jury's presence, the trial court allowed M.R. to testify about incestuous allegations he made against Phyllis on the ground that the State could use M.R.'s inconsistent statements to impeach him. *Record* at 214. Thereafter, in the jury's presence and over Phyllis's persistent objections,[8] the following exchange occurred between the State and M.R.:

Q. What, if anything, did you ever observe between J.W. and your mother of a sexual nature?

A. Nothing really.

Q. You never saw anything or heard anything?

A. No.

Q. Do you recall giving your statement to Trooper Smith on June 24th of 1991?[9]

A. Yes.

*Record* at 223. Additionally, on two occasions after this exchange occurred, the trial court instructed the jury that it could consider M.R.'s denial of an incestuous relationship with Phyllis solely for impeachment purposes. *Record* at 222, 224.

IND.CODE 34–1–14–15 governs the impeachment of a party's own witness. It provides:

The party producing a witness shall not be allowed to impeach his credit by evidence of bad character, unless it was indispensable that the party should produce him, or in case of manifest surprise,

---

6. Without reviewing all the titles of the various materials, we note that one of the exhibits, Exhibit 2A, was entitled "Rita and the Kid Next Door." *Record* at 412.

7. We agree, and the State does not dispute, that M.R.'s unsworn statement about Phyllis's prior, uncharged activity is inadmissible as substantive evidence. *See Modesitt v. State* (1991), Ind., 578 N.E.2d 649. In *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, our supreme court announced that evidence of prior uncharged sexual misconduct would no longer be admissible in Indiana in sex crimes prosecutions to show action and conformity with a particular character trait.

8. For convenience and clarity, we have deleted the numerous timely objections Phyllis raised throughout this exchange.

9. On June 24, 1991, at the Prosecutor's office, M.R. told Officer Frank Smith "that my mother and I did have sex." *Record* at 218. M.R. recanted prior to trial and, subsequently, during his direct examination, M.R. denied that Phyllis ever approached him for sexual purposes. *Record* at 217.

when the party shall have this right; but he may, in all cases, contradict him by other evidence, and by showing that he has made statements different from his present testimony.

Similarly, Federal Rule of Evidence 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling him." Although the State clearly had the authority to impeach M.R., our inquiry does not end here. Instead, we will examine the State's primary purpose in offering M.R.'s testimony. *See United States v. Gomez–Gallardo* (9th Cir.1990), 915 F.2d 553, 555 ("In evaluating the reason a witness is called, we determine whether the government examined the witness for the *primary* purpose of placing before the jury substantive evidence which is not otherwise admissible") (original emphasis).

In *United States v. Webster* (7th Cir. 1984), 734 F.2d 1191, the court allowed the prosecution to offer hearsay evidence to impeach its own witness, but cautioned:

[I]t would be an abuse of [Rule 607], in a criminal case, for the prosecution to call a witness that it knew would not give useful evidence, just so it could introduce [inadmissible] evidence against the defendant in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence—or if it didn't miss it, would ignore it.

*Id.* at 1192.

Here, although M.R.'s testimony related to allegations of Phyllis's uncharged sexual misconduct, the State did not examine M.R. for the *primary* purpose of placing this otherwise inadmissible evidence before the jury. *Gomez–Gallardo, supra.* Instead, the record confirms that the State questioned M.R. to ascertain whether he would corroborate a material issue in the case, namely T.L.'s claim that M.R. had seen Phyllis in bed with both T.L. and J.W. Because the State had a legitimate basis to call M.R. as a witness, we conclude that the State's impeachment of M.R. was proper.

Because the trial court erred in admitting the exhibits and testimony relating to sexu-ally explicit paraphernalia, we reverse and remand for a new trial.

ROBERTSON and GARRARD, JJ., concur.