**Jerry BOYD, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 10A05–9303–CR–92.**

Court of Appeals of Indiana,
Fifth District.

May 26, 1995.

Transfer Denied Aug. 7, 1995.

---

Vicki L. Carmichael, Jeffersonville, for appellant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

BARTEAU, Judge.

Jerry Boyd appeals his conviction of attempted murder, a Class A felony, for which he received a thirty-year sentence. Two issues are raised, which Boyd states as:

1. Whether the trial court erred in admitting the knife into evidence when such evidence had no relevance or connection to the crime charged?

2. Whether Boyd was denied a fair trial by the discovery violations and failure of the State to provide exculpatory evidence to defense counsel?

We affirm.

## FACTS

The facts most favorable to the verdict reveal that Boyd and the victim, Bobby Leverich, lived across the hall from one another in the Indiana Hotel in Jeffersonville. One night in March of 1992, the two neighbors got together and drank alcohol and listened to music with a fellow resident named "John." However, the comradery of the evening was short-lived, with Boyd accusing Leverich of making a homosexual advance toward "John." The three eventually went their separate ways, only to have Boyd return to Leverich's room on the pretext of apologizing for the accusation. When Leverich reached to meet Boyd's proffered handshake, Boyd stabbed him in the chest with a knife. The attack continued, with Boyd stabbing Leverich repeatedly in the chest, neck and thigh. He then bound Leverich, poured lamp oil on him and attempted to set the room on fire. When smoke activated the smoke alarm, Boyd knocked it from the wall and stomped out the fire. When an attempt to re-light it failed, he freed Leverich and instructed him to call an ambulance. Leverich asked Boyd what story he should use and Boyd told him to say he had been "jumped" in the west end of Louisville. Leverich drove himself to the hospital. He was treated for numerous stab wounds and a punctured lung. He did not follow Boyd's suggestion that he tell police he had been "jumped" in the west end of Louisville. Blood consistent with that of Leverich's and a substance which could have been lamp oil were found on Boyd's jeans. Ash on Boyd's shoes was consistent with the ash in Leverich's room and his shoes matched a print left in the ash in Leverich's room. Boyd maintained that he left "John" and Leverich in Leverich's room listening to music and had no knowledge of the events resulting in Leverich's injuries.

## THE KNIFE

The knife used in the attack on Leverich was never located, but was described by Leverich as a three-inch folding lock blade knife. Introduced into evidence at trial was a straight blade hunting knife. Boyd's girlfriend provided police with the knife and testified that it belonged to Boyd. Boyd objected to the introduction of the knife because of its irrelevance to the crime. The State conceded that the hunting knife was not the weapon used in the attack on Leverich, but argued that it was admissible to impeach Boyd, who had claimed in a statement to police that he had never owned a knife. The trial court admitted the knife, but admonished the jury that it was to be considered "in terms of its relation to the Defendant's statement."

Boyd contends that admission of the knife was error because it had no connection to the crime and was introduced by the prosecution solely to prejudice Boyd in the eyes of the jury. Boyd relies on *Rafferty v. State* (1993), Ind.App., 610 N.E.2d 880, to support this proposition.

As noted by Judge Baker in *Rafferty:*

The general rule in Indiana is that evidence is relevant if it tends logically to prove or disprove a material issue of fact. Evidence tending to prove a material fact is admissible even if the tendency to provide such proof is slight. Otherwise relevant evidence may be inadmissible, however, if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to the defendant. The admission of physical evidence is governed by the same rules of relevancy and materiality which govern admission of testimonial evidence.

610 N.E.2d at 883 (citation omitted).

The defendant in *Rafferty* faced two allegations of child molesting. The prosecution, over objection, introduced sexually explicit materials and a sexual device confiscated from defendant's home. There was no allegation that any of these items were connected to the crime itself. The victim testified that he had seen sexually explicit materials in defendant's home, but that the sexually explicit materials did not belong to the defen-

dant, that she had not shown them to him, and that he had discovered the sexual device hidden under defendant's mattress but that it had never been used in the sexual encounters. The items were admitted by the trial judge, who determined them admissible because they corroborated the victim's claim that he had been in the defendant's house.

This court reversed defendant's conviction and remanded for a new trial because of the improper admission of the sexually-oriented exhibits. The items were determined to be irrelevant, and thus inadmissible, because they were not connected to the crime and the justification for admitting the evidence—the victim's frequent presence and free access to the defendant's home—was not a disputed issue. Admission of the sexually-oriented exhibits was found not to be harmless error because the case was essentially a credibility contest between the victim and the defendant, and irrelevant exhibits which supported the State's characterization of defendant as a sexually deviant woman impermissibly affected that balance. *Id.* at 884.

There was no connection between the knife admitted in the case before us and the crime itself. Leverich testified that the hunting knife was not the knife used in the attack. The justification for admitting the knife was to contradict Boyd's statement that he had never owned a knife. While the situation here is similar to the one in *Rafferty,* in that the evidence sought to be presented was not directly linked to the crime, the auxiliary purpose espoused by the prosecution here was not clearly pretextual. Boyd's claim that he had never owned a knife, and thus presumably could not have been the person who attacked Leverich, was subject to impeachment. Thus, introduction of the hunting knife, while tenuous, was relevant to Boyd's credibility.

Because the knife had some relevance, the next inquiry is whether the probative value of the evidence was outweighed by its prejudicial impact. *Id.* at 883. The jury was clearly informed that the hunting knife was not the knife used to attack Leverich, and the trial judge admonished the jury that the knife was to be considered only in relation to Boyd's statement that he had never owned a knife. Given these factors, the risk that the jury would attach unjust emphasis to the knife is slim. Unlike *Rafferty,* where the prejudice to the defendant by admission of sexually explicit exhibits is obvious (one of the titles was "Rita and the Kid Next Door"), we are not persuaded in this case that the probative value of the knife was outweighed by any prejudice arising from its admission into evidence.

Finally, even if the knife had been improperly admitted, the error could be nothing but harmless. An error is deemed harmless if it has not prejudiced the substantial rights of the defendant. *Id.* at 883. Here, Leverich knew Boyd, socialized with him, and unequivocally identified him as his attacker. Leverich suffered wounds consistent with his description of the attack and the physical evidence in his room supported that account. In addition, Boyd's blue jeans were covered with blood and lamp oil, his shoes had ash on them, and the soles of his shoes matched a footprint left in the ash in Leverich's room. Even if we had determined that it was error to admit the hunting knife, in light of the overwhelming evidence against Boyd, it could be nothing but harmless error.

## DISCOVERY VIOLATIONS & EXCULPATORY EVIDENCE

Boyd contends that the prosecutor's repeated violations of discovery orders and failure to provide exculpatory evidence denied him a fair trial and denied his attorney adequate time to prepare a defense. The prosecutor failed to disclose to the defense, until shortly before trial, a statement Boyd had given to police. Following a hearing on Boyd's motion to suppress the statement, the trial court denied the motion, finding no prejudice to the defense because the statement was consistent with Boyd's notice of alibi. Boyd also sought to suppress laboratory test results not disclosed until a week prior to trial. The trial court denied the motion to suppress the lab results, noting the prosecutor had no control over the State Police lab. A trial court is afforded great discretion regarding discovery violations and absent clear error and resulting prejudice, a

trial court's determination concerning such violations will not be overturned. *Vanway v. State* (1989), Ind., 541 N.E.2d 523. While Boyd argues it was error to deny the motions to suppress, he does not establish how he was prejudiced by the untimely disclosure of these items. Because he has failed to establish prejudice, we will not reexamine the trial court's decision.

Boyd also argues error in the prosecutor's failure to disclose exculpatory evidence. At trial, a detective testified that fingerprints lifted from various items in Leverich's room were analyzed by his own department and a neighboring police department detective, and that the fingerprints recovered were not Boyd's. Defense counsel moved for a mistrial at that point, arguing that the prosecutor's failure to disclose this exculpatory evidence denied him a fair trial. The trial court denied the motion for mistrial, finding the undisclosed evidence insubstantial in relation to the evidence implicating Boyd.

Suppression by the prosecution of evidence favorable to an accused violates due process where the evidence has been requested by the accused and is material either to the guilt or punishment irrespective of the good faith or bad faith of the prosecution. *House v. State* (1989), Ind., 535 N.E.2d 103, 106, *reh'g denied* (citing *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215). In assessing the impact of non-disclosure, a court should determine whether the omitted evidence creates a reasonable doubt that did not otherwise exist. *House*, 535 N.E.2d at 106. "If there is no reasonable doubt about guilt whether or not additional evidence is considered, there is no justification for a new trial." *Id.*

Even assuming the fingerprint evidence could be considered exculpatory, it was not material enough to create a reasonable doubt that did not otherwise exist. The fingerprints taken from Leverich's room were compared with Boyd, and when they did not match, were not pursued. The police did not even compare them with Leverich's fingerprints to determine whether they belonged to him. As noted earlier, the evidence against Boyd was nearly overwhelming. The jury was presented with the fact that fingerprints not belonging to Boyd were found on items in Leverich's room and that Boyd's prints were not found. What other benefit Boyd perceives could have been gained from timely disclosure of this information is not explained. The prosecution's failure to disclose this evidence did not deprive Boyd of a fair trial and does not mandate reversal.

The conviction is affirmed.

KIRSCH, J., and SHARPNACK, C.J., concur.