946 N.E.2d 1209 (2011)
Sheila K. GRANGER, Appellant-Defendant,
v.
STATE of Indiana, Appellee-Plaintiff.
No. 10A01-1002-CR-39.
Court of Appeals of Indiana.
March 30, 2011.
*1211 Jeffrey D. Stonebraker, Chief Public Defender, Jeffersonville, IN, Attorney for Appellant.
Gregory F. Zoeller, Attorney General of Indiana, Andrew R. Falk, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
BAILEY, Judge.

Case Summary
Sheila K. Granger ("Granger") appeals from her convictions on five counts of Child Molesting, as Class A felonies,[1] three counts of Child Molesting, as Class C felonies,[2] and one count of Child Solicitation, as a Class D felony.[3]
We affirm in part, reverse in part, and remand for further proceedings.

Issues
Granger raises several issues for our review, which we renumber and restate as:
I. Whether the trial court abused its discretion in admitting items of a sexual nature into evidence because they were:
(a) Not specified in a search warrant;
(b) Irrelevant;
(c) Unduly prejudicial to Granger under Evidence Rules 403 and/or 404(b); or
(d) Kept on display during the trial; and
II. Whether her sentence is inappropriate under Appellate Rule 7(B).

Facts and Procedural History
From August to December 2007 and again from October to December 2008, S.R., who was born in 1996, and Granger's daughter, C.G., were dating. S.R. was a member of a little league football team coached by Granger's husband, Phil Granger ("Phil"). S.M., also born in 1996, was on the same football team and dated C.G. from December 2007 to October 2008. Both boys attended school with C.G. Granger and her husband became prominent figures in the lives of both boys and their families, paying for S.R.'s football fees and gear, driving S.R. home from practice sessions, buying gifts for the boys and members of their families, buying school clothes *1212 for S.R., becoming close friends with S.M.'s parents, and taking the boys and other family members on vacations to amusement parks and camp outings. Phil became a kind of father figure to S.R. because of S.R.'s difficult relationship with his own father.
During the period from August to December 2007, Granger began to fondle S.R. after football practices, initially passing this behavior off as a joke or mistake. This progressed to kissing, touching one anothers' genitalia, and S.R. performing oral sex upon Granger.
Sometime late in 2007, S.R. had a falling-out with C.G. As a result, S.R.'s mother, Crystal, restricted S.R. from having contact with C.G. Granger's attention then turned to S.M. Granger began to fondle S.M. This progressed to several episodes of sexual intercourse with Granger. Granger also performed oral sex on S.M. and asked S.M. to use sex toys on her, which he refused to do. After one sexual encounter, Granger told S.M. not to tell anyone about their relationship because she could go to jail. At some point, Granger told S.M. that she had become pregnant, that he had impregnated her, and that she had had an abortion.
After a period of time living elsewhere, S.R. and his family moved back to the community and in August 2008 S.R. began once again to play football with Phil's team. S.R. took care of Granger's family dog while the Grangers were on vacation in August 2008. After the family returned, Granger and S.R. had sex in the Grangers' home. Their sexual encounters became more frequent. S.R. and Granger had sexual intercourse on many occasions, often before Granger would drive S.R. to school. S.R. used sex toys on Granger, and Granger suggested they use a sex manual to try different sexual positions. Granger also told S.R. that he had impregnated her; she showed him the positive test, was crying, and eventually had an abortion.
Not long after this, S.R.'s relationship with Granger deteriorated. S.R.'s behavior at home worsened and Crystal became concerned about the amount of time S.R. spent with the Granger family. After talking with Phil and Granger by telephone, Crystal confronted S.R. about his relationship with the Grangers. S.R. told her that Granger had fondled him. On March 5, 2009, Crystal reported Granger's fondling of S.R. to Officer Joseph Waters ("Officer Waters"), the School Resource Officer at S.R.'s school.
On March 20, 2009, a warrant for Granger's arrest was issued, as were search warrants for Granger's home and for photographs of tattoos and other physical characteristics of Granger's body. Among the items obtained from the search of Granger's home were a "Manual of Sexual Positions"; some hand-written notes; three playing cards depicting nude figures, one of which was using a sex toy; four vibrators; condoms; an item called a "Tongue Joy Turbo Pack"; and an E.P.T. Home Pregnancy Test Kit. (App.65.)
On November 4, 2009, Granger filed a Motion to Suppress the items seized, claiming they were outside the scope of the search warrant and therefore the result of an unconstitutional search and seizure. Granger also filed a Motion in Limine to exclude much of this evidence from use at trial as unfairly prejudicial and/or evidence bearing only on Granger's character. The trial court denied each motion the same day.
A jury trial was held from November 4, 2009, to November 12, 2009. During the trial, Granger renewed her objections to the introduction of evidence she had sought to exclude in her prior motions. *1213 These objections were overruled. The jury found Granger guilty on all counts. On December 10, 2009, the trial court entered judgment against Granger under each count and sentenced her to thirty years imprisonment for each of the five convictions for Child Molesting, as Class A felonies; four years imprisonment for each of the three convictions for Child Molesting, as Class C felonies; and 1½ years imprisonment for Child Solicitation, as a Class D felony. Three Class A felonies and two Class C felonies were run concurrent with each other, and two Class A felonies, one Class C felony, and the Class D felony were also run concurrent with each other; each grouping of concurrent sentences was run consecutive to one another, yielding an aggregate consecutive term of sixty years imprisonment.
This appeal followed.

Discussion and Decision

Standard of Review
Granger challenges numerous of the trial court's decisions on the admissibility of evidence. We review a trial court's admission of evidence for an abuse of discretion. Camm v. State, 908 N.E.2d 215, 225 (Ind. 2009). We reverse the trial court's decision only when it is clearly against the logic and effect of the facts and circumstances before the court. Joyner v. State, 678 N.E.2d 386, 390 (Ind.1997), reh'g denied. Even if the trial court abused its discretion in admitting evidence, we leave the judgment undisturbed if that decision is harmless error. Fox v. State, 717 N.E.2d 957, 960 (Ind.Ct.App.1999), trans. denied. Harmless error occurs "when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." Lafayette v. State, 917 N.E.2d 660, 666 (Ind. 2009). We thus reverse "only if the record as a whole discloses that the erroneously admitted evidence was likely to have had a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict." Wales v. State, 768 N.E.2d 513, 521 (Ind.Ct.App.2002), trans. denied.

Items not Specifically Enumerated in the Search Warrant
We turn first to Granger's argument that the trial court abused its discretion when it denied her motion to suppress items seized when police executed a search warrant for her home and by subsequently admitting those items into evidence over her objection at trial. The warrant in question authorized the seizure of "Evidence pertaining to the crime of child molesting and child solicitation to wit but not limited to [sic] a vibrator, nuva ring [sic] contraceptive device and condoms."[4] (App.69.) The search did not result in the seizure of the NuvaRing device, but police obtained multiple vibrators and condoms. Also seized were items not described in the warrant. Granger challenges the constitutionality of the seizure of the following items: numerous vibrators; a book of sexual positions; three playing cards depicting nude figures, one of which was using a sex toy; an item called "Tongue Joy Turbo Pack"; and an E.P.T. Home Pregnancy Test Kit.
The Fourth Amendment to the United States Constitution protects against unreasonable *1214 searches and seizures.[5] Where a warrant has been legally obtained and evidence not identified in the warrant is seized while police are executing the warrant, the plain view doctrine may nevertheless render the seizure constitutional where "a police officer seize[s] items when he inadvertently discovers items of readily apparent criminality while rightfully occupying a particular location." Jones v. State, 783 N.E.2d 1132, 1137 (Ind.2003) (citing, inter alia, Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). To meet the plain view test, (1) the police officer's presence must be authorized under the Fourth Amendment, (2) the items seized must be in plain view, and (3) the incriminating nature of the evidence must be immediately apparent. Id.
Granger does not contend that the search warrant was invalid or that the items seized were not in plain view. Rather, she argues that because the unlisted items were not contraband, their incriminating nature could not have been immediately apparent and thus admission of these items into evidence at trial was unconstitutional. "The `immediately apparent' prong of the plain view doctrine requires that law enforcement officials have probable cause to believe the evidence will prove useful in solving a crime." Daniels v. State, 683 N.E.2d 557, 558 (Ind.1997). In Daniels, for example, eyewitness testimony established an individual called "Jay-Dog" as having shot someone. While executing a valid warrant, police came upon a calendar in Daniels's apartment with the words "Jay-Dog" written on it. The court held that the presence of the words "Jay-Dog" on the calendar at the defendant's residence, where a witness testified to the presence of the same person at a crime, gave rise to probable cause to believe the calendar would help solve the murder by helping to identify "Jay-Dog."[6]Id.
We cannot agree with Granger's contention that the "immediately apparent" prong of the plain view test is unmet with regard to each unlisted item of evidence. We shall address each such piece of evidence in turn. As to the whole of our approach, however, the testimony of Captain Rachel Lee ("Captain Lee"), of the Clark County Sheriff's Office, is instructive. Captain Lee testified that she was looking for "sex toys, a pregnancy test possibly and other items that had been described to me during my interview process with both young men" when she was conducting her investigation into S.R.'s and S.M.'s allegations. (Tr. 53.)
With regard to the proper seizure of the pregnancy test, the probable cause affidavit submitted in support of the search warrant application yields information in addition to Captain Lee's testimony. The affidavit indicates that S.M.'s mother, Kimberly, informed police that Granger had told her that she was pregnant, which was surprising to Kimberly because she knew Phil had undergone a vasectomy operation long before. The affidavit also reveals that at least one of the boys stated that Granger was using a NuvaRing contraceptive device and had used a condom with him once. Under these circumstances, given the probable cause requirements of the "immediately apparent" *1215 prong of the plain view test, we cannot agree that the trial court abused its discretion in admitting the pregnancy test into evidence.
We also part company with Granger as to the admissibility of the vibrators and the "Tongue Joy Turbo Pack" (which appears also to be a sex toy) under the plain view doctrine. The search warrant provided for seizure of "a vibrator." (App.69.) The probable cause affidavit indicated that one of the victims described a vibrator with some level of particularity. Multiple items of this type were recovered during the search, however, and we cannot agree that the trial court abused its discretion by admitting any or all of them into evidence simply because the warrant called for only "a vibrator." We also disagree with Granger's claim that the condoms were improperly seized, as the warrant calls for seizure of condoms, condoms were mentioned to police and are reflected in the probable cause affidavit, and such were discovered.
We agree with Granger that the playing cards featuring photographs of naked persons were not within the scope of the warrant, as there is no indication in either Captain Lee's testimony or in the probable cause affidavit that such items were at issue in the investigation. We will return to the question of whether admission of these items was harmless in a subsequent discussion below.

Relevance
Granger also challenges the evidence admitted by the trial court for lack of relevance. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. The admissibility of evidence is determined at the time a party seeks its introduction, and relevance is determined based upon the facts before the court at that time. Evid. R. 104(a). "The failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error on appeal." Jackson v. State, 735 N.E.2d 1146, 1152 (Ind.2000).
A party seeking to make physical evidence a part of the record must lay a proper foundation for its admission. In Hooper v. State, our supreme court set forth the requirements for admission of physical evidence: "the witness who observed the particular instrumentality must at least state that the item ... is `like' the one associated with the crime" and "there must be a showing that it is connected to the defendant and the commission of the crime." 443 N.E.2d 822, 825 (Ind.1983). That is, there is proper foundation for the introduction of physical evidence where 1) the characteristics of the exhibit "can be identified by eyewitness identification"; 2) the witness can identify the item; and 3) the item is relevant to the issues in the case. Wray v. State, 547 N.E.2d 1062, 1066 (Ind.1989).
We afford trial courts "broad discretion in determining the order of proof and in controlling trial proceedings," id.; also Evid. R. 611(a). "Where evidence is admitted subject to being connected up later, and no subsequent motion to strike the evidence is made, any error in the admission of the evidence is waived." Franciose v. Jones, 907 N.E.2d 139, 145 (Ind.Ct.App.2009), trans. denied. Thus, evidence with limited relevance or without adequate foundation upon admission may be introduced subject to the condition that its proponent demonstrates its relevance or establishes its foundation before the close of evidence.
*1216 "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the Court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." Evid. R. 104(b). Whether Rule 104(b) should result in the exclusion of evidence depends upon whether "the fact upon which the evidence depends is too speculative" at the time a party seeks introduction of the evidence. Cox v. State, 696 N.E.2d 853, 861 (Ind. 1998). Similarly, when foundation for an exhibit has not been completely laid at the time of its introduction into evidence, that evidence may be admitted subject to "connecting up" later. Thus, subsequent testimony may be used to shore up an exhibit's foundation and make harmless any error in premature admission of the evidence. Hooper, 443 N.E.2d at 825 (finding harmless error when an exhibit was introduced through a witness who could testify only that the exhibit was "like" one used by the defendant, but where later testimony by police officers connected the exhibit to the defendant and the charged offense).
Granger challenges the relevance of the various sex toys and other items retrieved from her home and the relevance of the photographs taken by Nurse Kathy Sceifers ("Nurse Sceifers"), all of which were introduced into evidence through the testimony of Captain Lee. Granger argues that admission of these items was an abuse of discretion because "no effort was made by the State to establish through this witness that the various items were relevant to the crimes charged." (Appellant's Br. 15.)
Before trial, Granger moved to suppress this evidence: she sought to suppress the items from the house for having been the fruit of an over-broad search, and the seized items and the photographs alike for their lack of relevance and unfairly prejudicial nature. Each motion was denied. At trial, the following exchange regarding the seized items took place:
Q: Now, I want to hand you ...
[THE STATE]: And Judge, what I'm going to do on this, this will be identification Exhibits # 2 thru [sic] # 13. And what I would like to do, if it's, and I know the ... What I want to do is; rather than have her pull out each one for identification, I want to have her look through it.
THE COURT: That's fine.
[THE STATE]: And then I'll ask her about this particular item generally.
[COUNSEL FOR GRANGER]: Judge, I don't have any objection to that procedure, but I would like to approach the Bench briefly.... Judge ... I want to renew my objection, I assume where we're going here is the introduction or the identification of each exhibit and I want to renew my motion based upon the, both the scopic search that I think these were seized illegally and with respect to the lack of relevance andand even if marginal relevance, the unfair prejudice to the Defendant.
THE COURT: Alright. We'll note that for the record. Thank you.
(Tr. 53-54.) Granger also renewed her objections to the photographs when these were introduced, and the evidence was admitted over her objections. Granger, then, is correct that the State did not articulate the relevance of these items at the time of their introduction.
At this point in the trial the exhibits had no relevance to the underlying criminal charges except that they were found in Granger's home, the search warrant for which was obtained based upon S.M.'s and S.R.'s statements to Captain Lee. The exhibits also had not been identified by S.M. or S.R. as having been used by Granger in their encounters with her. Thus, even if relevant, the admitted evidence lacked a *1217 proper foundation. The same is true of the photographs taken of Granger, since the physical characteristics shown in those photographs had not yet been identified by the boys.
Because of the apparent lack of relevance of all the exhibits to the charged offenses at the time of admission while some of these exhibits were made relevant later, then, the trial court should have required the State to explain how these items would be connected up with the charged offenses later in the trial, thereby granting conditional admission under Rule 104(b). Having failed to do so, the trial court erred.[7] Granger failed to move to strike this evidence, however, and thus the error is waived. Franciose, 907 N.E.2d at 139.

Whether the Erroneous Admission of Evidence Requires Reversal
Waiver notwithstanding, we now turn to whether the trial court's error was harmless. The trial court's erroneous admission of evidence is not sufficient by itself to warrant reversal. Granger must also show that the erroneous admission of evidence affected a substantial right because "the record as a whole discloses that the erroneously admitted evidence was likely to have had a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict." Wales v. State, 768 N.E.2d 513, 521 (Ind.Ct.App. 2002), trans. denied; also Ind. Trial Rule 61 (requiring that courts "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties," including the erroneous but harmless admission or exclusion of evidence).
In addition to the lack of relevance upon admission, Granger also asserts that the various exhibits were inadmissible because of undue prejudicial effect. Evidence Rule 403 permits a trial court to exclude evidence when its probative value is substantially outweighed by the danger of unfair prejudice. Evidence Rule 404 governs the admissibility of evidence related to "a person's character ... for the purpose of proving action in conformity therewith on a particular occasion." Evid. R. 404(a). A court must exclude from evidence highly prejudicial or inflammatory testimony or exhibits of a defendant's prior acts unless such evidence serves a purpose other than to demonstrate a supposed propensity on the part of a defendant to commit a crime charged. Evid. R. 404(b).
We divide the exhibits into three groups with respect to their admission into evidence, and we address any reversible error associated with each group in turn.
Photographs. Granger contends that the photographs were admitted in error. Beyond *1218 her objection as to relevance, Granger also contends that the State's introduction of the photographs, seized items, and testimony regarding each such exhibit was intended
to inflame the jury and to cause unfair prejudice to Granger ... to create the impression that Granger was a person of bad character ... [and] served the State's purpose of convincing the jury that Granger was a person of low moral character ... who had the propensity to commit sexual offenses.
(Appellant's Br. 22.)
As to their relevance, the photographs were offered because they identify Granger and corroborate testimony and other evidence given by the child victims, as Captain Lee's testimony about the victims' drawings of Granger reveals. Though lacking in relevance and foundation when introduced into evidence, the boys' testimony allowed the State to connect up the photographs through their knowledge about Granger's features, which they acquired through their sexual encounters with her.
Because the photographs serve to identify Granger as the perpetrator, Granger's argument that Rule 404 should have led to their exclusion from evidence also fails, as Rule 404(b) allows admission of evidence relevant to the identity of a perpetrator. Here, both boys testified that they observed numerous tattoos, piercings, and a shaved pubic area, and provided schematics depicting these identifying markings to Captain Lee. Because the photographs corroborate S.M.'s and S.R.'s testimony, the photographs are relevant and fall within an exception to Evidence Rule 404.
Although relevant, evidence may be excluded if its relevance is outweighed by undue prejudice. Evid. R. 403. Granger contends that that the admission of the photographs imposed undue prejudice and should have been excluded under Rule 403. Even grisly autopsy photographs, which could prejudice a jury against a defendant, are admissible when they are relevant to an issue the State must prove in its case. Helsley v. State, 809 N.E.2d 292, 295-96 (Ind.2004). The trial court granted Granger's Motion in Limine as to "the number of photographs that the State would be allowed to introduce." (Tr. 4.) Thus, only one detailed photograph of each feature identified by S.M. and S.R.'s diagrams was admitted by the trial court. While Granger pointed out in both her Motion in Limine and her argument before this court that the existence of the tattoos and other markings and the accuracy of the boys' identification of them could have been stipulated to, Granger did not, in fact, so stipulate. Absent Granger's failure to stipulate to facts where she admittedly could have done so and thereby limited any risk of prejudice imposed by the photographs, and given the State's use of the photographs to corroborate the victims' statements and drawings, the trial court was within its discretion to determine that the introduction of the photographs was not needlessly cumulative or otherwise unfairly prejudicial to Granger.
Relevance and Foundation of Sex Toys, Pregnancy Tests, Condoms, and Book of Sexual Positions. Granger contends that all of the items seized from her home were irrelevant and unfairly prejudicial. While without foundation or relevance upon admission when introduced through Captain Lee's testimony, the relevance and foundation for some of these items were eventually established through the testimony of S.M. and S.R. S.R. identified two of the sex toys and testified that either he or Granger used them. S.R. and S.M. each testified that Granger informed them of her use of pregnancy tests when she told each of the boys that he had *1219 impregnated her and that Granger had used a condom with them at least once. S.R. testified that Granger suggested they use positions illustrated in the book of sexual positions. S.R. also testified that the condoms introduced into evidence were like the one Granger had used with him. Because the required grounds for admission were met, any error in admitting the items before they were identified by the boys and connected to the defendant was harmless.
Relevance and Foundation of Unidentified Sex Toys and Playing Cards. The other sex toys and the playing cards featuring nudes were never connected up and were therefore erroneously admitted, but Granger failed to move to strike this evidence before the close of the State's evidence and has thus waived our review. Cf. Franciose, 907 N.E.2d at 145. Moreover, as we held above, the playing cards were improperly admitted because they were beyond the scope of the search warrant. See supra.
With respect to her argument on the question of the unfair prejudice imposed upon her by the admission of these exhibits, Granger directs this Court's attention to our decision in Rafferty v. State, 610 N.E.2d 880 (Ind.Ct.App.1993), for the proposition that "it can be reversible error to admit various exhibits relating to sexually explicit paraphernalia if the materials were not shown to have been used in the crime and were therefore irrelevant." (Appellant's Br. 26.) In Rafferty, we noted that absent the irrelevant exhibits "the remaining evidence against [Rafferty] comes down to a credibility contest" and that absent the misleading exhibits which were the only non-testimonial evidence against her, the jury might have acquitted Rafferty. Rafferty, 610 N.E.2d at 884.
Rafferty is inapposite here. Granger is correct that some of the sex toys and the playing cards were irrelevant and arguably had no purpose other than to inflame the jury against Granger, and the playing cards were outside the scope of the warrant and thus should have been excluded from evidence. But other items collected from Granger's house and introduced into evidence through Captain Lee's testimony were ultimately shown to be relevant and served to corroborate the testimony of other witnesses, thereby falling outside the scope of Rules 403 and 404(b) because of their direct connection to the charged offenses. These militate against a conclusion pursuant to Rule 404 that all of the exhibits lacked any value except to show Granger's supposed propensity to engage in sexual acts with children. The boys' testimony also undercuts Granger's claim that the probative value of those exhibits was so outweighed by their prejudicial effect as to make them inadmissible under Rule 403. Cf. Akard v. State, 924 N.E.2d 202, 207 (Ind.Ct.App.2010) (holding that probative value of exhibits actually used in the planning and course of conduct of a sex crime was not outweighed by risk unfair prejudice), aff'd in part, vacated in part, 937 N.E.2d 811 (Ind.2010) (affirming Indiana Court of Appeals on all issues except sentencing).
Moreover, other significant evidence upon which a jury could base its credibility findings and determine Granger guilty remains beyond the accusations of S.M. and S.R. This evidence includes the pregnancy test, vibrators, and Crystal's testimony regarding S.R.'s knowledge of Indiana's abortion law in connection with S.R.'s claim that Granger aborted her pregnancy.[8] Counter to Granger's assertion, then, exclusion of these items from evidence *1220 would have left the State with more than just "a credibility contest." Rafferty, 610 N.E.2d at 884. We thus hold that any error in admission of the playing cards was harmless.

Continued Display of Evidence
Granger also complains that the trial court abused its discretion when it allowed the various sex toys and other items that it admitted into evidence to remain on display for the jury throughout the course of the trial, referring to this as part of a "tactical decision" by the State to "strengthen their [sic] portrayal of Granger as a sexually deviant woman." (Appellant's Br. 25.) Our review of the record reveals no objection by Granger to the continued display of the various exhibits and, as noted above, failure to timely object results in waiver of review upon appeal. Jackson, 735 N.E.2d at 1152. Granger's failure to object to the continued display of evidence at trial has waived this issue for the purposes of review before this court.

Whether Granger's Sentence is Inappropriate
Finally, Granger asserts that her sentence, imposing upon her a total of sixty years in prison, is inappropriate under Appellate Rule 7(B). In Reid v. State, the Indiana Supreme Court reiterated the standard by which our state appellate courts independently review criminal sentences:
Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence through Indiana Appellate Rule 7(B), which provides that a court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The burden is on the defendant to persuade us that his sentence is inappropriate.
876 N.E.2d 1114, 1116 (Ind.2007) (internal quotation and citations omitted).
The Court more recently stated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind.2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. One purpose of appellate review is to attempt to "leaven the outliers." Id. at 1225. "Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Id. at 1224.
Granger was convicted of five counts of Child Molestation, as Class A felonies. The sentencing range for each such offense is between twenty and fifty years, with an advisory sentence of thirty years. I.C. § 35-50-2-4. She was also convicted of three counts of Child Molestation, as Class C felonies. The sentencing range for each of these offenses is between two and eight years, with an advisory sentence of four years. I.C. § 35-50-2-6(a). Finally, Granger was convicted of one count of Child Solicitation, as a Class D felony, with a sentencing range of six months to three years and an advisory sentence of 1½ years. I.C. § 35-50-2-7(a). The trial court imposed the advisory sentence upon Granger for each offense, running some sentences concurrently and others consecutively to arrive at an aggregated term of imprisonment of sixty years.
*1221 With regard to the nature of Granger's offenses, she engaged in sexual relations with two pre-teen boys while in a position of trust. Both Crystal and Kimberly trusted Granger with their children. Crystal acknowledged that, without the help of Granger and her husband, she could not have afforded for S.R. to play football. Kimberly's family became close friends with Granger's family. Each mother entrusted Granger with her child's well-being, with Crystal testifying that she depended upon Granger's family to provide an additional level of familial support for S.R. Both S.M. and S.R. testified to numerous occurrences of sexual activity between themselves and Granger over the course of more than a year. S.R. also testified that Granger appeared to play the two boys against each other. Finally, S.M. testified that Granger warned him that she could be arrested if the sexual nature of their relationship became known.
As to her character, Granger has no history of prior criminal activity. She was active in her church. She has also been employed as a hair stylist without interruption for many years and has an apparently good relationship with her daughters, who have depended upon her for support.
The presence of multiple victims generally "justif[ies] the imposition of enhanced and consecutive sentences." Sanchez v. State, 938 N.E.2d 720, 723 (Ind. 2010). Yet Granger's lack of prior criminal record, generally good conduct in the community separate from the offenses for which she was convicted, and lack of substantial physical harm to her victims make an executed aggregate sixty year sentence inappropriate here. Thus, as to the first of the two groups of sentences, we reduce the Class A felonies to the statutory minimum term of twenty years. We leave undisturbed the second group of sentences at the thirty year advisory term, but we order the final ten years suspended. This leaves Granger with an aggregate sentence of fifty years, with ten years suspended.

Conclusion
While the trial court abused its discretion in the admission of some, but not all evidence seized from Granger's home, the admission of that evidence was harmless error. Granger's sixty year executed sentence is inappropriate in light of the nature of her offenses and her character, and we reduce her aggregate sentence to fifty years with ten years suspended.
Affirmed in part, reversed in part, and remanded.
NAJAM, J., and DARDEN, J., concur.
NOTES
[1] Ind.Code § 35-42-4-3.
[2] Id.
[3] I.C. § 35-42-4-6.
[4] The State observes that Granger failed to include in her Appendix the search warrant at issue in this case, and urges that we disregard her argument as a result. Because the Motion to Suppress discloses the applicable text of the warrant, we decline to do so. We remind counsel, however, that it is incumbent upon the appellant to provide, inter alia, "any record material relied on in the brief unless the material is already included in the Transcript." Ind. Appellate Rule 50(B)(1)(e).
[5] While Granger directs our attention to Indiana Constitution Article 1, Section 11, which addresses searches and seizures, she makes no cogent argument related to this provision.
[6] We note that the court held the calendar should have been excluded from evidence because its slight probative value was outweighed by its prejudicial effect, but that its admission was nevertheless harmless error. Daniels, 683 N.E.2d at 559.
[7] Subject to the discretion of the trial court, parties will structure the presentation of their cases in a way that seems most likely to lead to a successful outcome, and it was the State's prerogative to introduce these exhibits at whatever point in the trial it chose so long as a proper foundation was laid. See Wray, 547 N.E.2d at 1066 (noting that "[t]he trial court has broad discretion in determining the order of proof and in controlling trial proceedings"). It is the trial court's responsibility when faced with an objection as to relevance to recognize when, as in this case, the relevance of a proponent's offered evidence is too contingent upon additional facts to admit without requiring an explanation of the evidence's present or prospective relevance. Where the relevance of the offered evidence is contingent upon facts to be proved later at trial, it is incumbent upon the trial court to require the proponent to connect up the offered evidence or risk at the least the possibility of the opposing party seeking to strike such conditionally admitted evidence and obtaining a limiting instruction to the jury regarding any evidence that was not properly connected up.
[8] See Ind.Code 16-34-2-1 et seq.