**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**KRISTIN A. MULHOLLAND**
Office of the Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jan 22 2013, 9:10 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| AARON DI-SHON WINDOM, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1206-CR-253 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Jr., Judge
Cause No. 45G04-1103-FA-8

**January 22, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Aaron Di-Shon Windom ("Windom") appeals his convictions for two counts of Attempted Battery, as Class C felonies,[1] and one count of Criminal Recklessness, a Class C felony.[2]  We affirm.

## Issue

Windom presents a single issue for review:  Whether the trial court abused its discretion in admitting testimony that Windom had been captured submerged in water after a high speed police chase and dog tracking.

## Facts and Procedural History

On February 17, 2011, Robert Lyons ("Lyons") was driving a vehicle on Highway I-80/94 and Brenda Driver ("Driver") was a passenger in the back seat, attending to their two-month-old infant in his car-seat.  When Lyons' vehicle was in the far left lane, a silver Dodge Charger rapidly approached and the driver flashed his lights.  Lyons responded by "flipping off" the driver of the Charger.  (Tr. 157.)

Driver watched as the silver Charger pulled beside the vehicle Lyons was driving. She saw the driver's face and observed that he had a gun.  Driver warned Lyons and put her arm and head over the car-seat to shield her infant son.  The Charger slowed and moved into a position that was diagonal to Lyons' vehicle.  Driver and Lyons then heard multiple shots. Lyons pulled over to the side of the road and called 9-1-1.  The Charger sped away.

---

[1] Ind. Code § 35-42-2-1, § 35-41-5-1.

[2] Ind. Code § 35-42-2-2.

Although Lyons, Driver, and their infant son were unharmed, at least eight bullets had struck their vehicle.

Driver assisted a police artist in constructing a composite sketch of the shooter, and the police issued a bulletin with the composite sketch and a description of the Charger. During the ensuing investigation, Lyons viewed a photographic lineup and was able to identify Windom as the shooter.

Five days after the shooting, Indiana State Trooper Sean Swaim ("Trooper Swaim") received information from Fountain County authorities that a silver Charger matching the description of the one involved in the shooting was traveling on Interstate 74. As Trooper Swaim encountered the vehicle, he saw that the right front tire appeared to have encountered stop sticks and was shredding. He pursued the vehicle as it traveled at speeds ranging from 80 to 100 miles per hour. The Charger was driven off the side of the highway and into a ditch.

Trooper Swaim saw the driver, armed with a gun, exit the vehicle and run into the woods. Assisted by other officers, he obtained a tracking dog to pursue the suspect, and the dog alerted upon arrival at a log in a creek. The police located Windom submerged in the water under the log where the tracking dog had alerted. An Indiana State Police dive team was able to retrieve a gun from the water near the log. DNA testing revealed that Windom's DNA had been deposited upon the abandoned Charger's interior, and forensic testing revealed that shell casings inside the Charger had been fired from the pistol retrieved from

the creek.[3]

The State charged Windom with three counts each of Attempted Murder, Attempted Battery, and Criminal Recklessness. The State also alleged him to be a habitual offender. Windom was brought to trial before a jury trial on March 29, 2012. During opening argument, Windom's counsel admitted that there were three eyewitnesses (Lyons, Driver, and Windom's passenger) to the shooting and that Windom had in fact fired a gun into Lyons' vehicle. However, counsel argued that Windom's actions had been reckless as opposed to intentional.

The jury acquitted Windom of Attempted Murder and one of the Attempted Battery counts but convicted him of two counts of Attempted Battery and three counts of Criminal Recklessness. Windom admitted his status as a habitual offender. The trial court entered a judgment of conviction on each of the Attempted Battery convictions and a single count of Criminal Recklessness. Windom was sentenced to five years imprisonment for each Attempted Battery conviction, to be served consecutively, and nineteen months for the Criminal Recklessness conviction. He received a ten-year sentence enhancement due to his habitual offender status, providing for an aggregate sentence of twenty years. This appeal ensued.

**Discussion and Decision**

Windom contends that the trial court erred in admitting evidence of his flight and capture. Conceding that flight could show consciousness of guilt in some circumstances, he

---

[3] Bullet fragments recovered from Lyons' vehicle could not be conclusively matched to the pistol.

argues that it is logical to assume that he was evading capture on a murder charge in an unrelated case as opposed to the Lyons shooting.[4] Based upon this assumption that the flight was irrelevant to the instant charges, Windom then argues that the challenged evidence encouraged the jury to find him to be of poor character and to convict him of intentional conduct instead of merely reckless conduct.

A trial court has broad discretion in ruling on the admissibility of evidence. Camm v. State, 908 N.E.2d 215, 225 (Ind. 2009). We will reverse the trial court's decision only when it is clearly against the facts and circumstances before the court; moreover, even if the trial court abused its discretion in admitting evidence, the judgment will be undisturbed if the decision to admit evidence is harmless error. Granger v. State, 946 N.E.2d 1209, 1213 (Ind. Ct. App. 2011). "Harmless error occurs 'when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction.'" Id. (quoting Lafayette v. State, 917 N.E.2d 660, 666 (Ind. 2009)). Accordingly, we reverse only when the record as a whole discloses that the evidence admitted in error likely had a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict. Id.

Windom claims that the trial court admitted the flight and capture evidence in violation of Evidence Rule 404(b), which provides in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may,

---

[4] On February 19, 2011, Windom's friend was shot to death. The State charged Windom with Murder and Windom alleged self-defense.

5

however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

Evidence of extrinsic offenses poses the danger that the jury will convict the defendant because he or she is a person of bad character generally, or has a tendency to commit crimes. Bassett v. State, 795 N.E.2d 1050, 1053 (Ind. 2003). The rationale for the prohibition against bad act and character evidence is that the jury is precluded from making the forbidden inference that the defendant had a criminal propensity and therefore engaged in the charged conduct. Monegan v. State, 721 N.E.2d 243, 248 (Ind. 1999). When a defendant objects to the admission of evidence on the grounds that it violates Rule 404(b), and specific acts evidence is offered for "other purposes," the trial court is to:

> determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act … determine that the proponent has sufficient proof that the person who allegedly committed the act did, in fact, commit the act … and third, balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403.

Camm, 908 N.E.2d at 223.

Here, however, the State did not offer specific act evidence extrinsic to the charged crime. "Flight and related conduct may be considered by a jury in determining a defendant's guilt." Dill v. State, 741 N.E.2d 1230, 1232 (Ind. 2001). Windom provides no authority for the exclusion of such evidence where a defendant is fleeing from multiple prosecutions. Too, evidence of an accused person's "guilty knowledge" is relevant evidence. Johnson v. State, 472 N.E.2d 892, 910 (Ind. 1985). As such, evidence of attempts to conceal or suppress implicating evidence is admissible. See id. Accordingly, evidence that Windom abandoned

6

the Charger, fled, and hid his gun in creek waters was admissible for a purpose other than to merely show his propensity to engage in wrongful acts. Windom has demonstrated no abuse of discretion in the admission of evidence.

Affirmed.

VAIDIK, J., and BROWN, J., concur.